Teresa S. Renaker – CA State Bar No. 187800
Vincent Cheng – CA State Bar No. 230827
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
E-mail: trenaker@lewisfeinberg.com
         vcheng@lewisfeinberg.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, | ) |
| Plaintiff, | ) Case No. C07-05875 WHA |
| vs. | ) |
| GROUP LONG TERM DISABILITY BENEFITS PLAN FOR EMPLOYEES OF CREDIT SUISSE FIRST BOSTON CORPORATION, | ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION FOR ADMINISTRATIVE RELIEF
TO PERMIT PLAINTIFF TO PROCEED UNDER FICTITIOUS NAME**

Pursuant to Civil Local Rule 7-11, Plaintiff hereby moves the Court for administrative relief in the form of an order permitting her to proceed under a fictitious name. Plaintiff, who suffers from Bipolar Disorder, brings this suit to recover benefits under the Defendant long-term disability plan ("the Plan"). Plaintiff contends that the Plan's insurer incorrectly interpreted the Plan's limitation on benefits for disabilities caused by "mental illness," as defined in the Plan, to apply to her condition. Applying the Ninth Circuit's standards, Plaintiff's motion should be granted because (1) no prejudice to the Plan or the public will result from her pseudonymity, and (2) proceeding under her true name would expose Plaintiff to exacerbation of certain symptoms, as well as to personal embarrassment and stigma. Additionally, Plaintiff should be permitted to proceed under a fictitious name to protect the medical privacy of her family members whose psychiatric histories are discussed in the record, and to prevent premature disclosure of Plaintiff's condition to her biological daughter, with whom Plaintiff has an ongoing relationship.

**1.    Legal Standard.**

A party may "preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) ("*Advanced Textile*"). In particular, nondisclosure of a party's identity is permitted where necessary "'to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Id.* (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980)). "Mental illness" is one of the most common "stigmatizing characteristics" justifying anonymity of a party. *Doe v. Rostker*, 89 F.R.D. 158, 161 (N.D. Cal. 1981); *see Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) ("*Hartford*"); *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997) ("*Provident*").[1]

---

[1] In *Advanced Textile*, the Ninth Circuit articulated additional factors for courts to consider in cases where "pseudonyms are used to shield the anonymous party from retaliation": the severity of the threatened harm, the reasonableness of the party's fears, and the party's vulnerability to retaliation. *Advanced Textile*, 214 F.3d at 1068. These factors are not relevant here, because Plaintiff does not assert a threat of retaliation by the Plan. *Cf. id.* at 1062. However, if these factors did apply, they would support Plaintiff's request, because, as set forth below, the threatened harm is severe, Plaintiff's fears are reasonable, and Plaintiff is particularly vulnerable to psychological injury, ridicule, and personal embarrassment.

PLAINTIFF'S MOTION FOR ADMINISTRATIVE RELIEF TO PERMIT PLAINTIFF TO PROCEED UNDER FICTITIOUS NAME
[CASE NO. C07-05875 WHA]                                                                                              Page 1

**2.    The Plan Will Not Be Prejudiced.**

Allowing Plaintiff to proceed pseudonymously will not prejudice the Plan. The Plan knows Plaintiff's identity. The complaint pleads Plaintiff's claim number to allow the Plan to identify her, and the Plan has already produced to Plaintiff her claim file as part of its initial disclosures. Allowing Plaintiff to proceed under a fictitious name will have no effect on the Plan's ability to mount a defense to her benefits claim. *Cf. Advanced Textile*, 214 F.3d at 1072 (noting that defendants might be prejudiced at later stage of litigation by inability to refute individualized allegations by anonymous plaintiffs); *Doe v. Texaco, Inc.*, 2006 WL 2850035, at *6 (N.D. Cal. 2006) (same). Moreover, the Plan will not be prejudiced because this case turns on a question of contract interpretation, not on any accusation of malfeasance by the Plan or its insurer. *Cf. Doe v. Lepley*, 185 F.R.D. 605, 607-8 (D. Nev. 1999) (holding that defendants would be prejudiced by anonymous attacks on their character); *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 141-42 (S.D. Ind. 1996) (same).

Because the Plan knows Plaintiff's identity and Plaintiff is not attacking the defendant's character or reputation, the factor of prejudice to the defendant carries no weight in this case.

**3.    The Public Interest Will Be Satisfied Without Disclosure of Plaintiff's Name.**

Weighing the public interest factor in *Advanced Textile*, the Ninth Circuit held that "[t]he public's interest in this case can be satisfied without revealing the plaintiffs' identities." 214 F.3d at 1069. The same is true in this case. While the application of mental illness limitations to Bipolar Disorder is an important current issue in group disability insurance, Plaintiff's true name is irrelevant to this issue. *See Doe v. Evans*, 202 F.R.D. 173, 175 (E.D. Pa. 2001) (considering "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities"). "Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

Indeed, the public interest will be better served by allowing Plaintiff to proceed anonymously than by requiring her to choose between pursuing her claim and forfeiting her

privacy or seeking to have all references to her medical condition sealed. Jayne S. Ressler, *Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age*, 53 U. KAN. L. REV. 195, 198-205 220 (2004) (noting harm to judicial system if plaintiffs forgo claims to preserve privacy due to ready electronic access to court filings). Because this action may shed valuable light on the proper interpretation of mental illness limitations in a time of changing understanding of Bipolar Disorder, the public interest will best be served by permitting Plaintiff to proceed under a pseudonym. *See Provident*, 176 F.R.D. at 467-8 (citing public interest in maintaining confidentiality of plaintiff's name).

    **4.    Special Circumstances Demonstrate Plaintiff's Need for Anonymity.**

        **a.    Disclosure of Plaintiff's Bipolar Disorder Will Expose Her to Injury.**

As noted above, a party may be permitted to proceed under a fictitious name if disclosure of her identity would expose her to injury. Here, due to the nature of Plaintiff's medical condition, disclosure of her identity would likely exacerbate her symptoms. In support of this factor, Plaintiff submits the declaration of her treating psychiatrist, Dr. Mark H. Swoiskin.[2] Dr. Swoiskin reports that when Plaintiff experienced a loss of privacy with respect to her condition in 2003, "she became quite unstable, as manifested by a dramatic increase in paranoid ideation, hypervigilance, agorophobia, and considerable difficulty functioning, lasting about a year." (Swoiskin Dec., ¶ 3.) As a result, Dr. Swoiskin's "medical opinion is that . . . a loss of anonymity would put her at substantial risk of relapse along the lines of what occurred in 2003." (Swoiskin Dec., ¶ 4.) Likewise, Plaintiff attests in her declaration[3] that past episodes during which she has felt herself to be "under scrutiny" by former co-workers, neighbors, and others due to disclosure of her Bipolar Disorder have exacerbated her symptoms. (Pl. Dec., ¶¶ 4, 5.) The factor of potential injury to Plaintiff supports permitting anonymity.

---

[2] Attached as Exhibit 1 to Declaration of Vincent Cheng (Cheng Decl.).

[3] Lodged with the Court with an administrative motion for leave to file under seal or, alternatively, for leave to file pseudonymously.

     **b.**    **Disclosure of Plaintiff's Bipolar Disorder Will Expose Her to Humiliation and Embarrassment.**

Plaintiff's concern about the stigma associated with Bipolar Disorder is far from unfounded. *See Hartford*, 237 F.R.D. at 550 (granting anonymity where plaintiff with Bipolar Disorder based request in part on "prior life experiences" that caused embarrassment and humiliation); *Provident*, 176 F.R.D. at 468 (granting anonymity in part because of "significant stigma associated with being identified as suffering from a mental illness"); *see also O'Brien v. Chaparro*, 2005 WL 6011248, at *3 (S.D. Fla. Dec. 8, 2005) (excluding evidence that witness suffered from Bipolar Disorder as substantially more prejudicial than probative); *Keno v. Station KYW-AM Infinity Broad. Corp.*, 2004 WL 2367824, at *1 (E.D. Pa. Oct. 20, 2004) (declining to dismiss news anchor's claim that she suffered verbal abuse, physical threats, and humiliation after she disclosed her Bipolar Disorder).[4]

Moreover, although Plaintiff is unlikely ever to be able to return to work at her former level in the financial services industry, she may be able to return to work in some capacity in the future. Public disclosure of her Bipolar Disorder will provide potential future employers with information regarding Plaintiff's medical condition that could prejudice her ability to obtain future employment. *See* Robert Sprague, *Googling Job Applicants: Incorporating Personal Information into Hiring Decisions*, 23 THE LABOR LAWYER 19, 38 (2007) (noting that Internet searches allow prospective employers "to discover information about candidates that would otherwise be prohibited in traditional applications and interviews"); *see* Daniel J. Solove, *Access and Aggregation: Public Records, Privacy and the Constitution*, 86 MINN. L. REV. 1137, 1139 (2002) (noting dramatic expansion of electronic access to public records).[5] Allowing Plaintiff to

---

    [4] Some psychiatric conditions may carry minimal stigma, but Bipolar Disorder is not one of them. For example, in *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869 (7th Cir. 1997), the court wrote of obsessive-compulsive syndrome, "This is a common enough disorder – some would say that most lawyers and judges suffer from it to a degree – and not such a badge of infamy or humiliation in the modern world that its presence should be an automatic ground for concealing the identity of a party to a federal suit." *Id.* at 872. Without a doubt, no federal court would write that "most lawyers and judges suffer from" Bipolar Disorder "to a degree."

    [5] *United States v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989), illustrates the relationship between ease of access and privacy interests: the Court found a "vast

1  proceed under a pseudonym will protect her legitimate interest in not disclosing to potential
2  employers that she suffers from a stigmatized and frequently misunderstood condition.

### c.     The Medical Privacy of Non-Parties Is Also at Stake.

Requiring Plaintiff to proceed under her true name will jeopardize not only her own medical privacy but that of members of her immediate family. The administrative record contains extensive descriptions not only of Plaintiff's personal psychiatric history and symptoms, but of her "family psychiatric history." These descriptions specify thirteen close family members' psychiatric problems, including descriptions of Bipolar Disorder, psychosis, substance abuse, and suicide. (Cheng Dec., ¶ 3 & Exh. 1.) These family members are identified by relationship to Plaintiff and in two instances by first name. (*Id.*) The evidence of Plaintiff's family psychiatric history will be discussed in this case because it is an important aspect of her argument that Bipolar Disorder is not a "mental illness" within the meaning of the Plan but a neurobiological disorder with a strong genetic component.[6] Permitting Plaintiff to proceed under a fictitious name will protect the medical privacy of her family members.

Finally, Plaintiff has a genetic daughter through egg donation with whom she has an ongoing relationship. The child's parents have elected not to tell the child about Plaintiff's Bipolar Disorder. (Pl. Dec. ¶ 7.) Plaintiff should be permitted to proceed under a fictitious name for the protection of this child. *See James v. Jacobson,* 6 F.3d 233, 242 (4th Cir. 1993) (in malpractice lawsuit involving unauthorized inseminations, pseudonymity, "without regard to the

//
//
//
//

---

difference between the public records that might be found after a diligent search of courthouse files . . . and a computerized summary located in a single clearinghouse of information," with a privacy interest existing in the latter but not the former. *Id.* at 764. Today, "[c]ourt records are one form of information that can now be collected easily and inexpensively from virtually anywhere." Ressler, 53 U. KAN. L. REV. at 199.

[6] *See* PINCUS & TUCKER, BEHAVIORAL NEUROLOGY (4th ed.), at 218 ("Bipolar disorder is probably transmitted as an autosomal dominant.").

merits of the claim," protects privacy of children without causing prejudice to defendant).

**5.    Conclusion.**

For the foregoing reasons, Plaintiff's motion for administrative relief should be granted.

Dated: April 7, 2008                               Respectfully submitted,

                                          LEWIS, FEINBERG, LEE,
                                          RENAKER & JACKSON P.C.

By:    /s/ Vincent Cheng
       Vincent Cheng

Attorneys for Plaintiff