LAURA E. FANNON (SBN 111500)
WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP
525 Market Street, 17th Floor
San Francisco, CA 94105-2725
Tel.: (415) 433-0990
Fax: (415) 434-1370

Attorneys for Defendant
GROUP LONG-TERM DISABILITY
BENEFITS PLAN FOR EMPLOYEES OF
CREDIT SUISSE FIRST BOSTON CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>vs.<br><br>GROUP LONG-TERM DISABILITY<br>BENEFITS PLAN FOR EMPLOYEES OF<br>CREDIT SUISSE FIRST BOSTON<br>CORPORATION,<br><br>        Defendant. | Case No.: C07-05875 WHA ADR<br><br>**DEFENDANT'S NOTICE, MOTION, AND<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF<br>MOTION FOR SUMMARY JUDGMENT<br>(ERISA)**<br><br>Date:    May 29, 2008<br>Time:    8:00 a.m.<br>Courtroom 9, 19th Floor<br><br>Hon. William H. Alsup |

Documents Attached:

1. Tubbs Declaration;
2. Fannon Declaration;
3. Request for Judicial Notice;
4. Notice of Manual Filing of Administrative Record;
5. Proposed Order Granting Motion.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 3

INTRODUCTION ........................................................................................... 3

   A.   Overview ............................................................................................ 3

   B.   Facts Pertinent to This Motion ......................................................... 4

      1.   The policy and Plan. ................................................................ 4

      2.   The claim. ................................................................................ 5

      3.   The appeal. .............................................................................. 7

   C.   The Complaint and Subsequent Events. ........................................... 9

ARGUMENT ................................................................................................ 10

I.  THE ABUSE OF DISCRETION STANDARD OF REVIEW APPLIES TO THIS COURT'S REVIEW OF THE CLAIM DETERMINATION ............................................. 10

   A.   The Plan Documents Confer Discretion Upon The Hartford To Determine Eligibility for Benefits and To Interpret the Terms of the Plan. ............................... 10

   B.   No More Stringent Standard of Review Should Be Imposed Beyond That Applicable Where a Structural Conflict Exists. .......................................................... 11

      1.   The Mental Illness Limitation Is Clear. ................................. 12

      2.   No evidence provided to The Hartford demonstrated that plaintiff's condition fell outside the Mental Illness limitation. ......................................... 13

II.  THE HARTFORD DID NOT ABUSE ITS DISCRETION IN APPLYING THE MENTAL ILLNESS LIMITATION ............................................................................ 15

III.  SHOULD THE MENTAL ILLNESS LIMITATION BE HELD NOT TO APPLY, THE CLAIM SHOULD BE REMANDED TO THE HARTFORD FOR FURTHER REVIEW . 17

CONCLUSION ............................................................................................. 18

-i-

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Abatie v. Alta Bates Health & Life Insurance Co.*
458 F.3d 955 (9th Cir. 2006) ................................................1, 9, 11, 18

*American Title Insurance Co. v. Lacelaw Corp.*
861 F.2d 224 (9th Cir. 1988) ................................................9

*Babikian v. Paul Revere Life Insurance Co.*
63 F.3d 837 (9th Cir. 1995) ................................................14

*Blankenship v. Liberty Life Insurance Co.*
 486 F.3d 620 (9th Cir. 2007) ................................................11

*Boyd v. Bell*
410 F.3d 1173 (9th Cir. 2005) ................................................15

*Eley v. Boeing Co.*
945 F.2d 276 (9th Cir. 1991) ................................................10

*Firestone Tire & Rubber Co. v. Bruch*
489 U.S. 101, 103 L.Ed.2d 80, [109 S.Ct. 948] (1989) ................................................10

*Fuller v. J.P. Morgan Chase & Co.*
423 F.3d 104 (2d Cir. 2005) ................................................16

*Kearney v. Standard Insurance Co.*
175 F.3d 1084 (9th Cir. 1999) ................................................10

*Kunin v. Benefit Trust Life Insurance Co.*
910 F.2d 534 (9th Cir. 1990) ................................................12

*Madden v. ITT Long Term Disability Plan*
914 F.2d 1279 (9th Cir. 1990) ................................................11

*Oster v. Barco of California Employees Retirement Plan*
869 F.2d 1215 (9th Cir. 1988) ................................................10

*Patterson v. Hughes Aircraft Co.*
11 F.3d 948 (9th Cir. 1997) ................................................7, 12

*Pengilly v. Guardian Life Insurance Co.*
81 F.Supp.2d 1010 (N.D. Cal., 2000) ................................................11

-ii-

*Richardson v. Pension Plan of Bethlehem Steel Corp.*
112 F.3d 982 (9th Cir. 1997) ...............................................................14

*Rosenthal v. Mutual Life Insurance Co. of N.Y.*
732 F.Supp. 108 (S.D. Fla. 1990) .........................................................12

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income
    Plan*
85 F.3d 455 (9th Cir. 1996) ...................................................................17

*Saffon v. Wells Fargo & Co. Long-Term Disability Plan*
 2008 U.S.App. LEXIS 8136 (9th Cir., Apr. 16, 2008) ..........................9

*United States v. Cantu*
12 F.3d 1506 (9th Cir. 1993) ...................................................................5

*Upper Deck Co. v. Federal Insurance Co.*
298 F.Supp.2d 994 (S.D. Cal. 2002), *aff'd,* 358 F.3d 608 ......................5

*Vega-Muniz v. Metropolitan Life Insurance Co.*
278 F.Supp.2d 146 (D.P.R. 2003)...........................................................16

*Walker v. American Home Shield Long Term Disability Plan*
180 F.3d 1065 (9th Cir. 1999) ...............................................................10

**STATE CASES**

*Equitable Life Assurance Society v. Berry*
212 Cal.App.3d 832, 260 Cal.Rptr. 819 (1989)......................................16

**FEDERAL STATUTES**

Employee Retirement Income Security Act of 1974 (ERISA)
29 U.S.C. section 1001 et seq ...................................................................3

ERISA
29 U.S.C. section 1132(a)(1) ..................................................................10

Fed.R.Evid. 201 ........................................................................................5

**MISCELLANEOUS**

Diagnostic and Statistical Manual of Mental Disorders
(4th ed., Text Revision) (2000) (the "DSM-IV-TR")...........................3, 5

DEFENDANT'S NOTICE, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. C07-05875 WHA ADR

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF JANE DOE ("PLAINTIFF") AND TO HER ATTORNEYS OF

RECORD:

NOTICE IS HEREBY GIVEN that on May 29, 2008, at 8:00 a.m., or as soon thereafter

as the matter may be heard in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San

Francisco, California, the Honorable William H. Alsup will hear the instant motion of

defendant Group Long Term Disability Benefits Plan for Employees of Credit Suisse First

Boston Corporation ("the Plan") for summary judgment or summary adjudication of issues,

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Specifically, the plan will seek

judgment in its favor and against plaintiff as to this entire action, or, in the alternative, as to the

following issues:

1.    The Plan seeks an order adjudicating that the determination of its claim

administrator, Hartford Life Insurance Company ("The Hartford"), of plaintiff's claim for

long-term disability benefits under her employer's employee welfare benefit plan is subject to

review by this court for abuse of discretion, pursuant to *Firestone Tire & Rubber Co. v. Bruch,*

489 U.S. 101, 115, 103 L.Ed.2d 80, 109 S.Ct. 948 (1989), and *Abatie v. Alta Bates Health &*

*Life Insurance Co.,* 458 F.3d 955 (9th Cir. 2006).

2.    If the court decides that The Hartford's claim determination is subject to review

by this court for abuse of discretion, the Plan seeks an order adjudicating that The Hartford did

not abuse its discretion in denying plaintiff's claim based upon the 24-month Mental Illness

limitation in the policy, and that the Plan is entitled to judgment in its favor and against

plaintiff as a matter of law.

3.    If The Hartford's claim determination is held to be subject to a more stringent

standard of review, the Plan seeks an order adjudicating that, under that more stringent

standard of review, The Hartford properly denied plaintiff's claim based upon the 24-month

Mental Illness limitation in the policy, and that the Plan is entitled to judgment in its favor and

against plaintiff as a matter of law.

DEFENDANT'S NOTICE, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. C07-05875 WHA ADR

348728.1

4.    The Plan anticipates that, in opposition to this motion, plaintiff will seek to place before this court the report of a magnetic resonance imaging (MRI) study performed on plaintiff in October 2007, three and a half years after benefits were terminated.  Should plaintiff do so, the Plan moves that this court (a) exclude this proffered evidence as outside the administrative record; or, in the alternative, (b) remand the claim to The Hartford to afford it an opportunity to consider whether the MRI and any associated reports support plaintiff's claim that, as of the date benefits were terminated, she suffered from a condition that was not within the two-year Mental Illness limitation.

5.    Should plaintiff prevail on the parties' cross-motions for summary judgment, with the result that the two-year Mental Illness limitation is held not to bar plaintiff's claim for benefits beyond the two years for which she was paid, the Plan seeks an order (1) remanding the claim to The Hartford for the determination of whether plaintiff continued to satisfy the policy's definition of disability after April 28, 2004; and (2) requiring plaintiff to provide medical records and offset information (i.e., information concerning Other Income Benefits, as defined in the policy) from the date of termination of benefits forward to the date of the order.

The motion for summary judgment as to plaintiff's entire action or, in the alternative, as to the specific issues set forth above, is made on the ground that there is no genuine issue as to any material fact, and the Plan is entitled to judgment as a matter of law both with respect to the standard of review and with respect to the substantive claim under review by this court. The motion is based upon this notice, motion, and memorandum of points and authorities, as well as the declarations of Laurie Tubbs and Laura E. Fannon; the request for judicial notice;

-2-

the manually filed redacted administrative record authenticated by Laurie Tubbs and Bates numbered H001 to H627; the proposed order granting the motion; and all pleadings on file in this action.

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

Date: April 24, 2008                                    By_____/s/_____
                                                                              Laura E. Fannon
                                                                    Attorneys for Defendant
                                                          GROUP LONG-TERM DISABILITY
                                                          BENEFITS PLAN FOR EMPLOYEES OF
                                                          CREDIT SUISSE FIRST BOSTON
                                                          CORPORATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

**A.      Overview.**

This suit is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. section 1001 et seq.  The complaint filed by plaintiff Jane Doe ("plaintiff") seeks recovery of long-term disability benefits under the Plan, which was underwritten and fully insured by Hartford Life Insurance Company ("The Hartford").  The Hartford is not a party to the action.

At the time of her claim, plaintiff was working for Credit Suisse First Boston Corporation ("Credit Suisse") as a financial advisor and stock broker.  She sought benefits under the Plan and policy based upon disability arising from manifestations of bipolar disorder, formerly known as manic-depressive disorder.  Bipolar disorder is classified as a "Mood Disorder" in the *Diagnostic and Statistical Manual of Mental Disorders (*4th ed., Text Revision*)* (2000) (the "*DSM-IV-TR*"), a fact of which, along with the *DSM-IV-TR,* the court may take judicial notice.  The policy contained a two-year limitation on benefits payable for disability resulting from Mental Illness or from any condition caused by Mental Illness, as defined in the policy.

-3-

1         The Hartford paid plaintiff benefits for the full two-year period allowable under the

2    policy for disability subject to the Mental Illness limitation, then terminated her benefits.

3    Plaintiff appealed this determination, and the decision was upheld on appeal. Plaintiff then filed

4    this action.

5    **B.**    **Facts Pertinent to This Motion.**

6        **1.**    **The policy and Plan.**

7         Plaintiff is a 38-year-old former stockbroker and Vice President, Private Client Group,

8    of Credit Suisse. Plaintiff described her work as "full service brokerage & advice to high net

9    worth clients." H272. During her employment at Credit Suisse, plaintiff participated in the

10   Plan, which at the time of her claim was underwritten by The Hartford. The group policy, no.

11   GLT-044278, paid 60 percent of monthly salary, to a maximum of $15,000 per month, for Total

12   Disability. Total Disability was defined as follows:

13       **Total Disability or Totally Disabled** means you are prevented by:

14       (1)    accidental bodily injury;
    (2)    sickness;

15       (3)    mental illness;
    (4)    substance abuse; or

16       (5)    pregnancy,

17       from performing the essential duties of your occupation, and as a result you are earning
    less than 20% of your Pre-disability Earnings, unless engaged in a program of

18       Rehabilitative Employment approved by us. . . .

19   H555.

20       The policy contains the following limitation on benefits for mental illness:

21           **MENTAL ILLNESS AND SUBSTANCE ABUSE BENEFITS**

22       **Are benefits limited for Mental Illness or substance abuse?**
    If you are Disabled because of:

23       (1)    Mental Illness that results from any cause; [or]

24       (2)    any condition that may result from Mental Illness; . . .
    . . .

25       then, subject to all other Policy provisions, benefits will be payable:

26       (1)    only for so long as you are confined in a hospital or other place licensed
        to provide medical care for the disabling condition; or

27       (2)    when you are not so confined, a total of 24 months for all such
        Disabilities during your lifetime.

28

-4-

**Mental Illness** means any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorders, but excluding demonstrable, structural brain damage.

H564.

The policy contains the following discretionary clause:

**Who interprets policy terms and conditions?**
We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

H568.

## 2.    The claim.

On October 29, 2001, plaintiff ceased work at Credit Suisse. H421. A few months later, she made a claim to The Hartford for short-term disability benefits and submitted proofs of loss. H421-22, H446-47. Plaintiff was represented by her current counsel almost from the inception of the claim. (See H389, May 20, 2002 letter.)

Plaintiff's initial Attending Physician Statement (Doctor's Certificate) was completed by her treating psychiatrist at that time, Stuart M. Gold, M.D. He diagnosed her with Dysthymia (ICD-9-CM Code 300.4), and Bipolar Disorder (296.89), as well as acute and chronic stress disorder (308.3). H446. These diagnoses are found in the *DSM-IV-TR,* the standard diagnostic manual used in the mental health professions, of which the court is asked to take judicial notice. See accompanying Request for Judicial Notice.[1] The number designation 296.89 signifies Bipolar II Disorder (Recurrent Major Depressive Episodes with Hypomanic Episodes). *DSM-IV-TR* at pp. 392-97. The court is also asked to take judicial notice of the inclusion of Bipolar II Disorder in the *DSM-IV-TR* in the chapter describing "Mood Disorders." *Id.* at p. 345.

Dr. Gold's narrative stated that plaintiff had a long history of

---

[1]    Courts in this Circuit have taken judicial notice that conditions listed in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* are psychiatric disorders. *See, e.g., United States v. Cantu,* 12 F.3d 1506, 1509 n.1 (9th Cir. 1993) (taking judicial notice that post-traumatic stress disorder is a psychiatric condition found in the *DSM*); *Upper Deck Co. v. Federal Ins. Co.,* 298 F.Supp.2d 994, 996 n.1 (S.D. Cal. 2002), *aff'd,* 358 F.3d 608 (taking judicial notice of the *DSM*). The fourth edition of the *DSM,* called the *DSM-IV-TR,* was published in 2000.

-5-

depression, panic, anxiety & dysthymia [low-grade, long-term depressed mood] & mood swings. Several episodes of suicidality & little defense against severe stresses re: work. Recent dissolution of partnership resulted in severe panic reaction. Diff. concentrating and focusing at work. Has lost her capacity to function on the job at this time. Severe insomnia & depression limiting her interpersonal relations as well.

H446.

The Hartford approved and paid both plaintiff's claim for short-term disability benefits, H250, and her claim for long-term disability benefits, H251-255. Plaintiff was paid the maximum benefit of $15,000 per month, less reductions for Other Income Benefits, for a total of $12,876.67 per month. H255. In the September 25, 2002 letter approving long-term benefits, plaintiff was advised that the policy limited benefits for certain disabilities, including plaintiff's, and that, "[w]ith benefits commencing on 04/29/2002, no benefits will be payable beyond 04/28/2004." H252. Neither plaintiff nor her attorney protested this aspect of the decision at that time.

Plaintiff supported her claim with office visit notes from her psychiatrists. She left Dr. Gold's care in October 2002 (H193) and began seeing Shane MacKay, M.D., for medication management. H184. His November 20, 2002 Psychiatric Consultation Summary, H175-183, described her extensive psychiatric history and pharmacologic treatment for her mood and anxiety problems. Plaintiff also saw a psychologist, Leslie Simon, Ph.D., for regular psychotherapy. H262.

After an administrative appeal, the Social Security Administration found plaintiff disabled within SSA guidelines beginning April 2002. H162-165. Plaintiff's monthly benefits from The Hartford accordingly were adjusted, and her net benefit was now $13,217.00. H160. Dr. MacKay's notes during the last year of her long-term disability benefit period reflected continued anxiety and mood disturbances. E.g., H122.

During the pendency of the claim, The Hartford periodically obtained updated information from plaintiff, through her attorney, and from her psychiatrist, Dr. MacKay. See, e.g., H081-95. At the end of the two-year Mental Illness limitation period, The Hartford wrote to plaintiff, through her attorney, to remind her that she had reached the maximum payable for

-6-

1    Mental Illness and that benefits would not be payable beyond April 28, 2004. H078-80. The

2    letter offered plaintiff the opportunity to appeal the decision by writing to The Hartford within

3    180 days. H079.

4        **3.      The appeal.**

5        On October 4, 2004, plaintiff's attorney, Teresa Renaker, Esq., wrote on plaintiff's

6    behalf to appeal the claim determination. H072-74. The appeal consisted of a three-page letter

7    arguing that bipolar disorder was not a Mental Illness at all, but rather a physical or organic

8    condition. H073. She argued that the provision in the policy was ambiguous, citing *Patterson*

9    *v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1997) (mental disorder limitation deemed

10   ambiguous for failing to specify "'whether a disability is to be classified as "mental" by looking

11   to the cause of the disability or to its symptoms.'"). No additional medical evidence was

12   submitted with the appeal.

13       The appeal was assigned to Laurie Tubbs in the Appeal Unit in Windsor, Connecticut.

14   She referred the matter to a third-party vendor, University Disability Consortium, to assign a

15   psychiatrist to review the file. She requested that the reviewing psychiatrist contact Dr.

16   MacKay as well as address the new contention that bipolar disorder was physical rather than

17   mental. H064-65. Borrowing from the language of the Mental Illness limitation, she also asked

18   whether plaintiff exhibited physical manifestations of her bipolar disorder that were sufficient to

19   limit her activities. H065. The Hartford advised plaintiff that the decision period would need to

20   be extended for an additional 45 days to accommodate the need for this review. H060.

21       The records were reviewed by Melvyn Lurie, M.D., a psychiatrist selected by UDC.

22   H043-59. The report itemized and summarized the records provided, chronicling her long

23   history of mood instability, paranoia, anxiety, anger/rage, irritability, feelings of hopelessness,

24   lack of motivation, and similar symptoms. He also summarized his telephone conversation with

25   Dr. MacKay, plaintiff's treating psychiatrist. Dr. MacKay discussed his diagnosis (bipolar

26   disorder and substance abuse), medications, and observations concerning plaintiff. Dr. MacKay

27   reported that plaintiff could not work consistently but said that he would support a return to

28   work trial if she asked him. He noted that no physical manifestations of her bipolar disorder

-7-

1  limited her activities.  According to Dr. Lurie's report, Dr. MacKay "also said that he did not

2  know about her disability situation as she was already disabled when he started seeing her and

3  he would not comment further on her ability to work."  H057.

4         Dr. Lurie noted that Dr. MacKay's assessment of plaintiff's functionality was surprising

5  in light of the level of plaintiff's disorganization as reflected in Dr. MacKay's records.  H057.

6  Dr. Lurie confirmed that he saw no physical manifestations of her bipolar disorder.

7         On December 7, 2004, Laurie Tubbs wrote to plaintiff's attorney upholding the

8  termination of benefits based upon the two-year Mental Illness limitation.  H018-22.  She

9  quoted the relevant policy provisions and summarized the history of the claim and of plaintiff's

10  treatment.  "Accordingly, after careful review, we find that Ms. [Doe's] disability falls into the

11  category of 'Mental Illness' as defined above.  Therefore, her benefits are limited to a total of 24

12  months during her lifetime.  As we paid benefits for this condition for the period of April 29,

13  2002 through April 28, 2004, she has received the maximum benefits allowed according to the

14  Policy."  H022.  The letter noted the lack of physical manifestations of her bipolar disorder.

15         It should be noted that at no time before benefits were terminated did plaintiff aver that

16  the Mental Illness limitation did not apply.  At no time before the filing of this action did

17  plaintiff ever provide or even mention any evidence of "demonstrable, structural brain damage"

18  (the exception to the Mental Illness limitation), such as an MRI or brain scan, or any evidence

19  that bipolar disorder, in plaintiff's case or in general, is a physical disorder.  Finally, plaintiff

20  never submitted to The Hartford any records or information from any medical specialty except

21  psychiatry.[2]  See generally Administrative Record, H075-537.

22

23

24

25

26  [2]      Pursuant to Fed.R.Evid. 201(b), the court may take judicial notice of the fact that
          psychiatry involves the diagnosis and treatment of mental disorders.  See, e.g,

27      http://www.emedicine.com/asp/dictionary.asp?keyword=psychiatry.  In contrast, neurology is the
          specialty associated with disorders of the central nervous system, which includes the

28      brain.  See, e.g., http://www.emedicine.com/asp/dictionary.asp?keyword=neurology.  Fed.R.Evid.
          201(b).

**C.    The Complaint and Subsequent Events.**

Plaintiff filed the present lawsuit on November 20, 2007. The complaint alleges that The Hartford's termination of plaintiff's benefits after two years based upon the Mental Illness limitation was improper, because "[b]ipolar disorder is not a 'disorder or ailment of the mind,' but is a neurobiological disorder that affects the physical structure and chemical processes of the brain." Complaint, ¶ 16. For the first time, plaintiff further alleges, "Magnetic resonance imaging demonstrates that Plaintiff has suffered structural damage to her brain, specifically global parenchymal[3] volume loss, commonly associated with bipolar disorder." Complaint, ¶ 17. Plaintiff seeks benefits under the Plan from the date of termination forward.

In post-litigation communications, plaintiff's attorney forthrightly acknowledged that the MRI referred to in the complaint was performed in October 2007, three and a half years after benefits were terminated and almost three years after the appeal process was concluded. The MRI therefore is not part of the administrative record. Fannon Decl., ¶ 2. In light of the fact that The Hartford had never seen this report, defense counsel asked whether plaintiff would be willing to stay the action and stipulate to a remand of the claim to The Hartford to consider the MRI and any related reports as they might bear on plaintiff's contention that the Mental Illness limitation did not apply. Through her counsel, plaintiff declined this request. Fannon Decl., ¶ 4.

On April 7, 2008, plaintiff filed a Motion for Administrative Relief To Permit Plaintiff to Proceed Under Fictitious Name. In that motion, plaintiff admits that "this case turns on a question of contract interpretation, *not on any accusation of malfeasance by the Plan or its insurer.*" *Id.* at 2:9-11, emphasis added. Statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226-27 (9th Cir. 1988).

---

[3]    The "parenchyma" of an organ signifies the distinguishing or specific cells of that organ, contained in and supported by the connective tissue. See *e-Medicine Online*, http://www.emedicine.com/asp/dictionary.asp?keyword=parenchyma.

DEFENDANT'S NOTICE, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. C07-05875 WHA ADR

348728.1

**ARGUMENT**

**I**

**THE ABUSE OF DISCRETION STANDARD OF REVIEW**

**APPLIES TO THIS COURT'S REVIEW OF THE CLAIM DETERMINATION**

**A.      The Plan Documents Confer Discretion Upon The Hartford To Determine**

**Eligibility for Benefits and To Interpret the Terms of the Plan.**

In actions challenging denials of benefits based upon interpretations pursuant to ERISA, 29 U.S.C. section 1132(a)(1)(B), the district court reviews the matter *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 103 L.Ed.2d 80, 109 S.Ct. 948 (1989).  The court is to look to the text of the ERISA documents to decide the standard of review for denial of benefits.  *Walker v. American Home Shield Long Term Disability Plan,* 180 F.3d 1065, 1068 (9th Cir. 1999).  The policy here explicitly accords such discretion to The Hartford:

> **Who interprets policy terms and conditions?**
> We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

H568.

When an ERISA plan vests the claim administrator with such discretionary authority, the administrator's decision is reviewed under the deferential "arbitrary and capricious" or "abuse of discretion" standard.  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999). Historically, substantial deference has been accorded to the administrator under this standard. In *Oster v. Barco of California Employees Retirement Plan*, 869 F.2d 1215, 1218 (9th Cir. 1988) (superseded by statute on other grounds), the Ninth Circuit held that there can be no abuse of discretion unless the decision was so "patently arbitrary and unreasonable as to lack foundation and factual basis and/or authority in governing case or statutory law."  Even decisions "directly contrary to evidence in the record" do not necessarily amount to an abuse of discretion.  *See, e.g., Eley v. Boeing Co.*, 945 F.2d 276, 279 (9th Cir. 1991) (not abuse of discretion to deny

-10-

1  benefits despite expert evidence showing that a certain procedure was diagnostic and therefore

2  was covered by the plan); *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1285 (9th

3  Cir. 1990) (not arbitrary and capricious to deny benefits without considering a finding by the

4  Social Security Administration that the plaintiff was totally disabled).

5      Similarly, the rule of *contra proferentem*, construction of ambiguous terms in the policy

6  against the drafter, does not apply where the standard of review is abuse of discretion.

7  *Blankenship v. Liberty Life Ins. Co.*, 486 F.3d 620, 625 (9th Cir. 2007); *Pengilly v. Guardian*

8  *Life Ins. Co.*, 81 F.Supp.2d 1010 (N.D. Cal., 2000).  The question when applying this standard

9  is whether the claim fiduciary's interpretation was reasonable, not whether it was correct.

10  *Pengilly*, 81 F.Supp.2d at 1018.

11  **B.**    **No More Stringent Standard of Review Should Be Imposed Beyond That**

12         **Applicable Where a Structural Conflict Exists.**

13      In recent years, the courts in ERISA cases have undertaken an analysis of whether claim

14  determinations adverse to the claimants are subject to more stringent review based upon a

15  conflict of interest on the part of the claim administrator.  This analysis is to be undertaken

16  when, as here, the entity that made a claim determination adverse to the claimant also would

17  have been responsible for paying the benefits: i.e., a formal or "structural" conflict of interest

18  exists.

19      In *Abatie v. Alta Bates Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006), the

20  Ninth Circuit revised its approach to analyzing the standard of review.  "Abuse of discretion

21  review applies to a discretion-granting plan even if the administrator has a conflict of interest,"

22  the court stated.  *Id.* at 965.  "We read *Firestone* to require abuse of discretion review whenever

23  an ERISA plan grants discretion to the plan administrator, but a review informed by the nature,

24  extent, and effect on the decision-making process of any conflict of interest that may appear in

25  the record."  *Id.* at 967.  Thus, the conflict of interest does not change the standard of review

26  itself, but instead causes the court to consider whether the conflict of interest influenced the

27  decision.

28

-11-

1    The court in *Abatie* gave examples of some facts that might increase the "level of

2    skepticism" with which the court might view the claim administrator's decision, including

3    providing inconsistent reasons for the denial or failing to credit a claimant's reliable evidence.

4    The court also gave examples of facts suggesting that only a low level of skepticism is

5    warranted, such as a lack of evidence of malice or self-dealing. *See id.* at 968.

6    Here, nothing in the administrative record points to any justification for more than the

7    minimal skepticism called for by the formal conflict of interest that exists by virtue of The

8    Hartford's dual role. First, the Mental Illness limitation is clear, and the administrative record

9    contains no evidence that The Hartford's decision was motivated by anything more than a

10   desire—and a duty—to apply the clear Plan terms as written to a well-known psychiatric

11   condition. Second, plaintiff never presented any evidence at all to The Hartford that her

12   condition fell outside the Mental Illness limitation.

13   **1.    The Mental Illness Limitation Is Clear.**

14   Ninth Circuit cases considering mental illness coverage limitations deem them

15   ambiguous for one of two reasons:  (1) The term "mental illness" or similar phrase is not

16   defined at all in the policy; or (2) if it is defined, the definition does not specify whether the

17   insurer categorized the illness by symptoms or by causes. *See, e.g., Kunin v. Benefit Trust Life

18   Ins. Co.*, 910 F.2d 534 (9th Cir. 1990) ("mental illness" not defined in the policy); *Patterson v.

19   Hughes Aircraft Co.*, 11 F.3d 948 (9th Cir. 1993) ("mental disability" unclear because the

20   provision did not specify whether cause or symptoms of disability determined application); *see

21   also Rosenthal v. Mutual Life Ins. Co. of N.Y.*, 732 F. Supp. 108 (S.D. Fla. 1990) ("mental or

22   nervous disorder" not defined; unclear whether based on cause or symptoms).

23   Again, the full provision (which plaintiff quotes only in part in the complaint), states:

24   **MENTAL ILLNESS AND SUBSTANCE ABUSE BENEFITS**
25   **Are benefits limited for Mental Illness or substance abuse?**
     If you are Disabled because of:
26       (1)    Mental Illness that results from any cause; [or]
27       (2)    any condition that may result from Mental Illness; . . .
     . . .
28   then, subject to all other Policy provisions, benefits will be payable:

-12-

(1)    only for so long as you are confined in a hospital or other place licensed
       to provide medical care for the disabling condition; or
(2)    when you are not so confined, a total of 24 months for all such
       Disabilities during your lifetime.

**Mental Illness** means any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorders, but excluding demonstrable, structural brain damage.

H564.

The limitation in the Hartford policy applies to disability from "Mental Illness that results from *any* cause," as well as any conditions *caused by* Mental Illness. Causation thus is removed as a distinguishing factor; only symptoms define the applicability of the provision. Plaintiff's symptoms were entirely psychological, behavioral, or emotional. They are detailed in her own accounts and in her psychiatrists' office visit notes as including emotional dysregulation and mood swings (depressed mood, hypomania), anxiety and panic, and paranoid ideation, as well as a host of other emotional, psychological, and behavioral symptoms that impeded her ability to function in the workplace. For example, in his August 26, 2003 office visit note, Dr. MacKay described plaintiff as "feeling more uncomfortable/paranoid. Feels jumpy . . . feels raw, easily overwhelmed." In plaintiff's Claimant Questionnaire, plaintiff stated, "I cry a great deal about seemingly meaningless things, am unable to [illegible] a stable mood . . . My mood changes are upsetting to me." H109. The Mental Illness limitation applied by The Hartford is clear and unambiguous as applied to bipolar disorder.

2.    **No evidence provided to The Hartford demonstrated that plaintiff's condition fell outside the Mental Illness limitation.**

Plaintiff argues that bipolar disorder has organic causes and therefore is a physical illness, not a mental illness. This argument does not bear scrutiny.

First, whether or not bipolar disorder has organic causes, the policy definition, like the *DSM-IV-TR*, which categorizes both depression and bipolar disorder as "mood disorders," is based upon symptoms rather than causes.

Second, if plaintiff is suggesting that her bipolar disorder is physical, because all thoughts, emotions, and behaviors necessarily occur in the physical body, her interpretation of

-13-

1    the Mental Illness provision would lead either to an absurd result or to the need to read the

2    Mental Illness provision out of the policy altogether.  Neither is permissible under long-standing

3    rules of contract interpretation.[4]  *See, e.g., Richardson v. Pension Plan of Bethlehem Steel*

4    *Corp.,* 112 F.3d 982, 985 (9th Cir. 1997) ("Each provision in an agreement should be construed

5    consistently with the entire document such that no provision is rendered nugatory.") (citation

6    omitted); *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995) ("'We will not

7    artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer

8    and any other interpretation would be strained, no compulsion exists to torture or twist the

9    language of the policy.'") (citation omitted).

10        Third, and most important, even if the cause of plaintiff's bipolar disorder were relevant

11   in applying the Mental Illness provision, the administrative record does not contain *one shred* of

12   evidence that plaintiff's bipolar disorder was organically caused.  The office visit notes of

13   plaintiff's treating psychiatrists discussed plaintiff's symptoms and their treatment of plaintiff's

14   symptoms.  The administrative record contained no tests or even medical opinions directed to

15   the cause of plaintiff's condition.

16        Similarly, while the claim was under consideration by The Hartford, no argument was

17   even made, let alone supported, that plaintiff's disability was caused by "demonstrable,

18   structural brain damage," the one limited exception carved out from the Mental Illness

19   definition.  Plaintiff submitted no test results, no brain scans, no records of treaters other than

20   psychiatrists, or any other such documentation.  Even the appeal did not include any expert

21   reports or other substantiation of plaintiff's contention that her condition was physical rather

22   than mental.  The Hartford based its decision on plaintiff's and her psychiatrists' description of

23   her symptoms, and nothing submitted on appeal demanded modification of that analysis.

24

25

---

26   [4]    It should be noted that, in her Motion for Administrative Relief To Permit Plaintiff To
        Proceed Under Fictitious Name, filed April 7, 2008, even plaintiff herself characterizes
27        bipolar disorder as a mental illness," *id.* at 1:20, and as a "psychiatric condition," *id.* at
        4:23-24, 5:5-7, not as brain damage (treatable by a specialist in neurology) or as a
28        physical illness.

-14-

Even if The Hartford were deemed to have been operating under a structural conflict of interest, thereby inducing some level of "skepticism" in this court's review—indeed, even if such a conflict were assumed *arguendo* to have been flagrant—the result would be the same here: plaintiff's condition, as revealed in the records provided to The Hartford during the pendency of the claim, was a Mental Illness subject to a maximum benefit of two years. Otherwise stated, if the determination was correct on the documentation provided—and there is no allegation that The Hartford failed to obtain or declined to consider any documentation—its motivation is irrelevant.

## II

## THE HARTFORD DID NOT ABUSE ITS DISCRETION

## IN APPLYING THE MENTAL ILLNESS LIMITATION

An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact. *See Boyd v. Bell*, 410 F. 3d 1173, 1178 (9th Cir. 2005). As discussed above, none of these occurred here:

First, plaintiff was told from the inception of her claim that benefits were limited for her condition. H252. Near the end of the benefit period, plaintiff was given a full explanation for why benefits were not payable beyond 24 months. H078-80. When she appealed, The Hartford sent the file out for an opinion by a psychiatrist, an opinion that did not point to the applicability of any exception to the Mental Illness limitation or to any analysis of bipolar disorder as falling outside the limitation. H043-59. Plaintiff again was given a full explanation of The Hartford's reasoning on appeal. H018-22.

Second, as discussed above, The Hartford's construction of the policy and application of its terms to the facts of this claim were consistent with the policy terms.

Third, The Hartford relied upon plaintiff's and her psychiatrists' own diagnoses and factual recitations in reaching its determination.

Finally, The Hartford's conclusion cannot be said to be arbitrary and capricious when courts in various jurisdictions have come to the same conclusion on comparable facts.

-15-

1        For example, in *Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104 (2d Cir. 2005),

2    involving a plaintiff with bipolar disorder, the plan limited benefits to 18 months if the disability

3    arose out of a "mental or emotional disease or disorder." The Plan Administrator determined

4    that bipolar disorder was a mental illness based on the *DSM-IV*. Upholding the district court's

5    grant of summary judgment in favor of the Plan, the Second Circuit held that the plan

6    administrator had not abused its discretion by relying on the *DSM-IV* to determine that bipolar

7    disorder was a mental illness.

8
    It may well be that bipolarity is a manifestation of a chemical or electrical reaction in the
9    brain and that it may be said to arise ultimately from a physical cause. But the issue
      under the Plan wording is whether Fuller's "disability" "arises from" a mental disorder;
10   a question quite distinct from whether the disorder arises from a physical cause.

11   *Id.* at 107.

12       In *Vega-Muniz v. Metropolitan Life Ins. Co.*, 278 F.Supp.2d 146 (D.P.R. 2003), the Plan

13   limited benefits for "mental illness" to 24 months. "Mental illness" was defined as a "mental,

14   emotional, or nervous condition of any kind." On cross-motions for summary judgment, the

15   plaintiff claimed that bipolar disorder was caused by organic and neurological problems.

16   Rejecting this argument as not relevant to its analysis, the court observed,

17
    The Court also recognizes that there is a debate, both among the practitioners who play a
18   role in this case and in the medical community, as to whether the symptoms displayed
      by Plaintiff are indicative of an organic or a mental disorder. However, it is not the role
19   of the Court to determine whether Plaintiff's illness should be considered organic or
      psychological based on the definition contained in Plaintiff's benefits plan. Rather, the
20   Court's role is to determine whether Defendants had substantial evidence to support their
      finding that Plaintiff's illness was not physical and did not fall under the definition
21   contained in the plan.

22

23   *Id.* at 155. The court found that the defendant's denial was not an abuse of discretion because

24   the determination was supported by "substantial evidence."

25       In *Equitable Life Assurance Society v. Berry,* 212 Cal.App.3d 832, 260 Cal.Rptr. 819

26   (1989) (decided under California law), the policy's long-term disability coverage did not

27   include "Mental or nervous disorders" and the medical insurance coverage paid only half the

28   costs of "Mental or nervous treatment [which] means treatment for a neurosis, psycho-neurosis,

-16-

1  psychopathy, psychosis, or mental or nervous disease or disorder of any kind." *Id.* at 835. The

2  plaintiff suffered from manic-depressive illness, now known as bipolar disorder. The parties to

3  the lawsuit did not dispute that bipolar disorder was an organic disease caused by a chemical

4  imbalance. The lower court had held that the defendant's denial of claims was proper and that

5  the terms were unambiguous. The appeals court agreed that the contract terms were

6  unambiguous, in that lay people would understand the limitation to refer to symptoms rather

7  than causes. *Id.* at 840. Based on the symptoms described by the plaintiff's expert, it was held

8  that the trial court properly determined that the symptoms of bipolar disorder reflected a mental

9  illness.

10          These cases demonstrate two principles: First, it is the policy language that controls the

11  analysis. If the policy does not define mental illness in terms of causes, the genesis of the

12  disorder is irrelevant. Second, it hardly can be "arbitrary and capricious" for a claim

13  administrator to reach the conclusion that The Hartford reached when learned judges have done

14  the same. Although there is variety in the way courts analyze these issues, at a minimum a

15  finding that bipolar disorder is a mental illness under a variety of definitions—or even where the

16  term is undefined—is not unreasonable.

**III**

18  **SHOULD THE MENTAL ILLNESS LIMITATION BE HELD NOT TO APPLY, THE**

19  **CLAIM SHOULD BE REMANDED TO THE HARTFORD FOR FURTHER REVIEW**

20          Plaintiff's claim was paid for what The Hartford believed to be the maximum period

21  available under the policy. Should the court find that the Mental Illness limitation did not bar

22  further benefits, however, the claim should be remanded to The Hartford for a determination

23  whether plaintiff continued to satisfy the policy's disability definition after April 28, 2004, the

24  period through which The Hartford has plaintiff's treatment records. *See, e.g., Saffle v. Sierra*

25  *Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir.

26  1996) (remanding to plan administrator, rather than district court, to determine whether claimant

27  was disabled); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 951 (9th Cir. 1993) (same).

28  Although the district court may hear evidence where procedural irregularities have prevented

-17-

1    full development of the administrative record, *Abatie*, 458 F.3d at 973; *see Saffon v. Wells*

2    *Fargo & Co. Long-Term Disability Plan,* 2008 U.S.App. LEXIS 8136, *26 n.6 (9th Cir., Apr.

3    16, 2008), here there is no such evidence of procedural irregularities and no occasion to waste

4    judicial resources by having the court serve as a claim administrator.

5         Moreover, to the extent that plaintiff attempts to rely upon the October 2007 MRI study,

6    fairness dictates that the court either preclude this evidence as irrelevant or remand the claim to

7    The Hartford to consider it as it may bear on plaintiff's condition as of April 29, 2004, the date

8    of termination of benefits.  Seeking judicial review of medical evidence that plaintiff expressly

9    declined to permit The Hartford to consider in a meaningful context (i.e., in the reopened appeal

10   process that The Hartford had offered to undertake, rather than as part of the litigation) would

11   be both unfair and a waste of judicial resources.

### **CONCLUSION**

13       Plaintiff's claim for disability is based upon bipolar disorder, a long-recognized mental

14   illness, both as a lay person would understand the term and as defined in The Hartford's policy.

15   The claim handling involved a straightforward application of the policy language to the claim.

16   Nothing in the administrative record suggested that plaintiff's condition should be viewed as

17   somehow outside the application of this limitation, which has appeared in policies such as this

18   for many decades.  Accordingly, The Hartford respectfully requests that this court grant the

19   relief requested in its notice of motion.

20   Dated: April 24, 2008                    WILSON, ELSER, MOSKOWITZ,
21                                            EDELMAN & DICKER LLP

22

23                                           By _____/s/_____
24                                                   Laura E. Fannon
                                                  Attorneys for Defendant
25                                           GROUP LONG-TERM DISABILITY
                                             BENEFITS PLAN FOR EMPLOYEES OF
26                                           CREDIT SUISSE FIRST BOSTON
                                             CORPORATION

27

28

-18-

DEFENDANT'S NOTICE, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. C07-05875 WHA ADR

348728.1