Teresa S. Renaker – CA State Bar No. 187800
Vincent Cheng – CA State Bar No. 230827
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
E-mail: trenaker@lewisfeinberg.com
          vcheng@lewisfeinberg.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LARA DOE, a fictitious name, ) | Case No. C07-05875 WHA |
| Plaintiff, ) | **PLAINTIFF'S MEMORANDUM OF** |
| vs. ) | **POINTS AND AUTHORITIES IN** |
| ) | **OPPOSITION TO DEFENDANT'S** |
| GROUP LONG TERM DISABILITY ) | **MOTION FOR SUMMARY** |
| BENEFITS PLAN FOR EMPLOYEES OF ) | **JUDGMENT** |
| CREDIT SUISSE FIRST BOSTON ) | |
| CORPORATION, ) | Date:    May 29, 2008 |
| Defendant. ) | Time:    8:00 a.m. |
| ) | Dept:    Courtroom 9, 19th Floor |
| ) | Judge:   Honorable William H. Alsup |

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF ISSUES TO BE DECIDED. . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Plaintiff's Occupation and Disability. . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Nature of Bipolar Disorder. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    Pertinent Plan Provisions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.    Plaintiff's Claim for Disability Benefits Under the Plan. . . . . . . . . . . . . . . 5

IV.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Applicable Legal Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    Summary Judgment Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.    Standards Pertaining to Exclusionary Provisions . . . . . . . . . . . . . . 8

            3.    Standard of Review of ERISA Benefit Claims . . . . . . . . . . . . . . . . 9

      B.    The Plan's Mental Illness Limitation Provision Is Unenforceable Because It Is
            Not "Clear, Plain, and Conspicuous." . . . . . . . . . . . . . . . . . . . . . . . . . 10

      C.    The Plan Cannot Carry Its Burden to Prove Facts Showing That Bipolar
            Disorder Is a "Mental Illness" Under Its Terms. . . . . . . . . . . . . . . . . . . . 11

            1.    Under the Current State of Medical Science, Bipolar Disorder Is Not a
                  "Psychological, Behavioral or Emotional Disorder or Ailment of the
                  Mind." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            2.    Under Governing Ninth Circuit Law, the Plan Defines "Mental Illness"
                  With Respect to the Cause of the Condition. . . . . . . . . . . . . . . . . . 14

            3.    The Plan's Reliance on the Language "Mental Illness That Results From
                  Any Cause" And "Any Condition That May Result From Mental Illness" Is
                  Unavailing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      D.    Hartford's Decision to Terminate Plaintiff's Benefits and Interpretation of the Plan
            Should Be Reviewed *De Novo*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      E.    If the Court Determines That the Applicable Standard of Review Is Abuse of
            Discretion, Evidence in the Record Supports a High Degree of Skepticism and
            Plaintiff Should Be Permitted to Conduct Discovery Going to Hartford's Conflict
            of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      F.    Plaintiff's Claim Should Not Be Remanded. . . . . . . . . . . . . . . . . . . . . . 18

      G.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                    Page No.

Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2007)... . . . . . . . . . . . . . . . . . . . . 10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246 (2d Cir. 2004).. . . . . . . . . . . . . . 9

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101(1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997 (10th Cir. 2004). . . . . . . . . . . . . . . . . . 9

HS Services, Inc. v. Nationwide Mut. Ins. Co., 109 F.3d 642 (9th Cir. 1997). . . . . . . . . . . . . . 9

Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan, 349 F.3d 1098
        (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Jenkins v. Montgomery Indus., Inc., 77 F.3d 740 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . 9

McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1205 (10th Cir. 1992).. . . . . . . . . . . 9

Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938
        (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rosenthal v. Mut. Life Ins. Co. of NY, 732 F.Supp. 108, 110-11 (S.D. Fla. 1990). . . . . . . . . . 12

Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382 (9th Cir. 1994).. . . . . . . . . . . . . . . . 8

Santaella v. Metropolitan Life Ins. Co., 123 F.3d 456 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . 9

Scott v. Harris, - U.S. -, 127 S. Ct. 1769, 1774 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Taft v. Equitable Life Assur. Soc'y, 9 F.3d 1469 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . 10

Vega-Muniz v. Metropolitan Life Insurance Company, 278 F. Supp. 2d 146 (D.P.R. 2003)    13

**State Cases**

Arkansas Blue Cross & Blue Shield, Inc. v. Doe, 733 S.W.2d 429 (1987) (en banc). . . . . . . . . 12

Equitable Life Assurance Society of the United States v. Berry,
        212 Cal. App. 3d 832 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Federal Statutes**

ERISA § 2, 29 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

## I.  INTRODUCTION

16    This action under ERISA[1] is about whether Bipolar Disorder, the medical condition that

17  renders Plaintiff disabled, falls within the definition of "mental illness" in the Defendant Group

18  Long Term Disability Benefits Plan for Employees of Credit Suisse First Boston Corporation ("the

19  Plan").  The Plan is an ERISA-governed welfare benefit plan sponsored by Credit Suisse First

20  Boston Corporation ("Credit Suisse") and insured by Hartford Life Insurance Company

21  ("Hartford").  The Plan defines "mental illness" as a "psychological, behavioral or emotional

22  disorder or ailment of the mind, including physical manifestations of psychological, behavioral or

23  emotional disorders, but excluding demonstrable, structural brain damage."

24    Plaintiff has been disabled by Bipolar Disorder since October 2001.  On April 5, 2004,

25  Hartford terminated Plaintiff's benefits, invoking the Plan's 24-month limitation on benefits where

26  disability is due to "mental illness."  In October 2004, Plaintiff requested review of the termination

27  of her benefits, arguing that Bipolar Disorder was not a "psychological, behavioral or emotional

28

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

1   disorder or ailment of the mind," but was a physical disorder of the brain.  Two months later,

2   Hartford informed Plaintiff that it had decided to uphold its April 2004 determination on the

3   ground that she had not shown that she had "physical manifestations" of Bipolar Disorder that

4   were disabling.  Because the Plan's definition of mental illness includes physical manifestations of

5   psychological, behavioral or emotional disorders, Hartford's response failed to address the issue

6   raised by Plaintiff.  In fact, throughout the claim process, Hartford never offered any rationale or

7   analysis to support its conclusion that Bipolar Disorder is a "mental illness" within the meaning of

8   the Plan rather than a physical disorder.

9         Attempting to remedy this deficiency in litigation, the Plan's Motion for Summary

10  Judgment employs a two-pronged strategy.  First, the Plan argues that the Plan's definition of

11  "mental illness" ignores the cause of the disorder in question.  That is incorrect.  The definition

12  specifically includes physical symptoms that have a mental cause, and excludes brain damage.

13  Despite this specificity, the definition does not expressly include other physical conditions with

14  emotional or behavioral symptoms, such as Bipolar Disorder.  Second, by repeatedly citing

15  Plaintiff's psychological symptoms and referencing the DSM-IV, Hartford seeks to obscure the

16  well-supported medical fact that Bipolar Disorder is a physical condition.

17        It is well-established that the limiting provision must be clear, plain, and conspicuous to be

18  enforced; that the burden is on the Plan to establish that an exclusionary provision applies; and that

19  an exclusionary provision must be strictly and narrowly construed.  Applying these standards, the

20  Plan has not shown and cannot show that no genuine issue of material fact exists as to whether

21  Bipolar Disorder is a "mental illness" within the meaning of the Plan.  The Court should apply *de*

22  *novo* review in light of Hartford's failure to decide this issue on Plaintiff's request for review.  If

23  abuse of discretion review applies, then Plaintiff should be permitted to take discovery going to the

24  appropriate level of skepticism to be applied to Hartford's decision.

## II.  STATEMENT OF ISSUES TO BE DECIDED

26  1.    Whether the 24-month mental illness limitation fails to satisfy the requirement that

27        exclusionary provisions be "conspicuous, plain, and clear" and is therefore

28        unenforceable against Plaintiff;

2.    If the limitation is "conspicuous, plain, and clear," whether the Plan has carried its burden to show the absence of any genuine issue of material fact that Bipolar Disorder is within the Plan's definition of "mental illness";

3.    Whether Hartford failed to make a discretionary determination on Plaintiff's request for review as to whether Bipolar Disorder is a "mental illness," rendering de novo review appropriate, and whether on de novo review, genuine issues of material fact preclude summary judgment for the Plan; and

4.    If abuse of discretion review is appropriate, whether Plaintiff should be permitted to conduct discovery going to the standard of review, including discovery into information omitted from the administrative record.

### III.    STATEMENT OF FACTS

**A.    Plaintiff's Occupation and Disability.**

Plaintiff has more than ten years' employment experience providing banking, brokerage, advice, and other financial services to high net-worth individuals. (H272; H356-58)[2]  She was employed by Credit Suisse beginning January 2001 as Vice President in the company's Private Client Services Group. (H356; H426.)  Plaintiff worked as a financial advisor and stock broker, advising Credit Suisse clients on large-scale financial transactions, as well as on insurance investments and the purchase and sale of securities. (H354; H356.)  She was responsible for management of assets in the hundreds of millions of dollars and had discretionary authority on several Credit Suisse client accounts. (H356.)

In addition to specialized knowledge relating to investments, Plaintiff's position as Vice President in Credit Suisse' Private Client Services Group required interpersonal skills necessary to work closely with individuals on their financial planning, to attract and retain clients, and to work with other professionals on clients' financial matters. (H354; H364.)  Managing client portfolios on a daily basis while keeping abreast of financial developments demanded intense concentration

---

[2] All references to "H [number]" herein are to the Bates numbers of the documents that Defendant manually filed with the Court on April 24, 2008. (*See* Dkt 38 (Defendant's Notice of Manual Filing of Administrative Record in Connection with Defendant Plan's Motion for Summary Judgment (ERISA)).)

1    and focus, and the ability to make good judgment under severe time pressure.  (H354; H364.)

2    　　　According to the notes of Dr. Stuart M. Gold, Plaintiff's psychiatrist at that time, in the

3    spring of 2001, Plaintiff began to exhibit symptoms that resulted in the diagnosis of Bipolar

4    Disorder, Type II, with the diagnostic code 296.89.  (H277-285).)  Her doctor was particularly

5    concerned about her ability to manage significant financial assets for her clients in accordance with

6    her fiduciary duties.  (H311.)  By October 2001, she had become unable to function in her job.

7    Plaintiff went on a leave of absence starting October 29, 2001, and terminated her employment

8    with Credit Suisse effective December 28, 2001.  (H356, H421.)   The Social Security

9    Administration found Plaintiff totally disabled as of October 2001.  Likewise, Hartford's

10   Behavioral Health Case Manager concluded that it was unlikely that Plaintiff would be able to

11   return to her pre-disability level of functioning.  (H490.)

12

13   **B.    Nature of Bipolar Disorder.**

14   　　　According to the National Insitutes of Health, Bipolar Disorder "is a brain disorder that

15   causes unusual shifts in a person's mood, energy, and ability to function."  (Plaintiff's Request for

16   Judicial Notice ("RJN"), Exh. C, p. 2.)  "'It is an illness that is biological in its origins, yet one that

17   feels psychological in the experience of it.'"  (*Id.* (quoting Kay Redfield Jamison, Ph.D., *An*

18   *Unquiet Mind*, at 6 (1995).)   Key characteristics of Bipolar Disorder support the conclusion that

19   its causes are physical.  First, studies indicate that Bipolar Disorder has a genetic link.  The DSM-

20   IV-TR, relied on by the Plan, cites a familial pattern in Bipolar Disorder and notes that twin and

21   adoption studies "provide strong evidence of a genetic influence" for Bipolar Disorder.

22   AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL DISORDERS,

23   FOURTH EDITION, TEXT REVISION ("DMS-IV-TR"), 395 (2000); *see* PINCUS & TUCKER,

24   BEHAVIORAL NEUROLOGY (4th ed.), at 218 ("Bipolar disorder is probably transmitted as an

25   autosomal dominant.").  Plaintiff's family psychiatric history, documented in the claim record,

26   bears out this proposition.  (H50, H490.)

27   　　　Second, Bipolar Disorder is treated with medications, including medications that are also

28   used to treat conditions that would conventionally be characterized as physical.  (RJN Exh. C, at

13.)  For example, Plaintiff's treatment is primarily pharmacologic management, including prescriptions for anticonvulsant medications such as Depakote and Topomax, which are indicated for prevention of epileptic seizures and migraine headaches.  (H81-95, H116-31, H175-87, H190; *see* RJN, Exh. B.)  Psychotherapy can help patients cope with Bipolar Disorder, but is used in addition to medication, not instead of medication.  (RJN Exh. C, at 17.)

Third, Bipolar Disorder is associated with abnormal thyroid gland function.  (RJN Exh. C, at 16.)  This is particularly so in patients, like Plaintiff, who exhibit rapid cycling.  (*Id.*)  Plaintiff has been diagnosed with hypothyroidism since age 16.  (H178, H181.)  Fourth, brain-imaging studies have identified differences between the brains of people with Bipolar Disorder and the brains of healthy individuals.  (RJN Exh. C, at 11-12.)  In Plaintiff's case, an MRI shows "global parenchymal volume loss," meaning loss of volume of brain matter.  (Declaration of Vincent Cheng in Support of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Cheng Decl."), Exh. A.)

**C.    Pertinent Plan Provisions.**

Benefits are payable under the Plan to a participant who is totally disabled, defined as follows:

**Total Disability** or **Totally Disabled** means you are prevented by:

(1)    accidental bodily injury;
(2)    sickness;
(3)    mental illness;
(4)    substance abuse; or
(5)    pregnancy,
from performing the essential duties of your occupation . . . .

(H555.)  For a participant who, like Plaintiff, becomes disabled prior to reaching age 60, the maximum duration of benefits is to the first of the month after the participant's 65th birthday.  (H550.)  Benefits can terminate under any of six circumstances:

**When will benefits terminate?**

We will cease benefit payment on the first to occur of:
(1)    the date you are no longer Disabled;
(2)    the date you fail to furnish proof, when requested by us, that you continue to be Disabled;
(3)    the date you are no longer under the Regular Care of a Physician, or refuse to be

examined by a Physician, if we require such an examination;
(4)    the date you die;
(5)    the date determined from the Maximum Duration of Benefits Table shown in the Schedule of Insurance; or
(6)    the date your Current Monthly Earnings exceed 80% of your Indexed Pre-Disability Earnings.

(H563.)  It is undisputed that none of these events had occurred with respect to Plaintiff as of the time that Hartford ceased making benefit payments to her.  Nontheless, Hartford terminated Plaintiff's benefits on the basis of the following provision:

## MENTAL ILLNESS AND SUBSTANCE ABUSE BENEFITS

**Are benefits limited for Mental Illness or substance abuse?**

If you are Disabled because of:

(1)    Mental Illness that results from any cause;
(2)    any condition that may result from Mental Illness;
(3)    alcoholism; or
(4)    the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance,

then, subject to all other Policy provisions, benefits will be payable:

(1)    only for so long as you are confined in a hospital or other place licensed to provide medical care for the disabling condition; or
(2)    when you are not so confined, a total of 24 months for all such Disabilities during your lifetime.

**Mental Illness** means any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorder, but excluding demonstrable brain damage.

(H564.)

## D.    Plaintiff's Claim for Disability Benefits Under the Plan.

By letter dated September 25, 2002, Hartford informed Plaintiff that it had approved her claim for disability benefits under the Plan.  (H251.)  Hartford's letter stated that

[t]he policy limits benefits for certain disabilities.  According to the medical documentation in our files, [Plaintiff's] disability falls into that category.  Please refer to the Maximum Benefit Duration provision on page 18 of the policy booklet for full details.  With benefits commencing on 04/29/2002, no benefits will be payable beyond 04/28/2004.  If [Plaintiff] is hospitalized that date may be extended.

(H252.)  Page 18 of the policy booklet does not contain any "Maximum Benefit Duration provision"; instead, it contains the "Mental Illness and Substance Abuse Benefits" provision

quoted above.  (H564.)  The letter did not quote the mental illness benefits provision.

By letter dated April 5, 2004, Hartford informed Plaintiff that "LTD benefits are no longer payable beyond 4/28/04." (H078.)  Quoting the mental illness benefits provision, Hartford explained that

> [t]he medical information in our file from Dr. Gold and Dr. MacKay confirm that [Plaintiff] is disabled due to Bipolar Disorder, which is a condition that falls into the category stated in the limited language above.  Because of this, [Plaintiff's] benefits have been limited to a total of 24 months.

(H079.)

By letter dated October 4, 2004, Plaintiff, through counsel, requested review of Hartford's April 5, 2004 determination that Bipolar Disorder was a "mental illness" within the meaning of the Plan, arguing that "bipolar disorder is a physical or organic condition, not a mental disorder." (H068.)  Hartford's Appeal Specialist summarized the request for review in the claim record, recognizing that Plaintiff's counsel "specifically challenges our classification of Bipolar Disorder falling into the plans [sic] 'Mental Illness and Substance Abuse Benefits' limitation provision" and "cites case law throughout her letter and notes that we have failed to prove that this is a mental illness under the Plan." (Pages following H478, at p. 1.[3])  The Appeal Specialist concluded, "Unsure if the case law cited should be reviewed by the law dept.  [D]iscuss with Bruce." (*Id.*)

Despite recognizing that the appeal raised the question whether by Bipolar Disorder is "physical or organic" rather than "psychological, emotional or behavioral," Hartford never investigated or reached a determination on this question.  Instead, Hartford determined to handle Plaintiff's request for review by referring the file to University Disability Consortium ("UDC") to "verify/confirm if the medical evidence suggests and/or supports any physical manifestations of her bi-polar disorder that would be considered significant and limiting." (*Id.*)  After reviewing Plaintiff's medical records, Dr. Melvin Lurie of UDC concluded, "In answer to specific questions: She does not exhibit any physical manifestations of her bipolar disorder." (H39.)  Under the terms

---

[3]  These pages were omitted from the administrative record produced with the Plan's initial disclosures and inserted without bates numbering when the record was manually filed. (Declaration of Laura E. Fannon in Support of Motion for Summary Judgment (ERISA), ¶ 5.)

of the Plan, this question was a non-starter, because "physical manifestations of any psychological, emotional or behavioral disorder" are a "mental illness" within the Plan's definition. (H564.)  As Hartford initially recognized, Plaintiff did not argue that she suffered from "physical manifestations" of Bipolar Disorder, but that Bipolar Disorder was not a "mental illness" at all. Nonetheless, Hartford denied Plaintiff's request for review on the basis that "the medical evidence reveals that her symptoms are associated with bipolar disorder and there are no documented physical manifestations related to this condition." (H22.)

Following this denial, Hartford archived Plaintiff's file. (H478.)  However, her file was later retrieved and sent to Bruce Luddy. (*Id.*)  Although the claim file does not reflect Mr. Luddy's position or the reason Plaintiff's file was sent to him, earlier testimony by Mr. Luddy in other litigation indicates that he was Hartford's Manager of Litigation and Appeals, responsible for supervising Hartford's staff members who handled appeals of long-term disability claims.  (Cheng Dec., Exh. B, at 5:9, 14:16-17.)[4]  Thus, Plaintiff's claim file may have been sent to Mr. Luddy in connection with a review of the appeal process on her claim.

## IV.  ARGUMENT

### A.    Applicable Legal Standards.

#### 1.    Summary Judgment Standard.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets these requirements, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The non-moving party must merely demonstrate that there is evidence from which a fact finder *might* return a verdict in his or her favor. *Id.* at 257.  The court views all evidence and factual inferences "in the light most favorable to the party opposing the [summary

---

[4]  Mr. Luddy also had a role in the defense of litigated disability claims, but Plaintiff's file was forwarded to him in 2006, more than 18 months *before* she filed suit on her claim.

1   judgment] motion." *Scott v. Harris*, - U.S. -, 127 S. Ct. 1769, 1774 (2007) (citation omitted).

2   Summary judgment is inappropriate when a disability policy's mental limitations provision is

3   ambiguous. *See Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938,

4   943 (9th Cir. 1995) (finding that undefined terms such as "mental illness" and "functional nervous

5   disorder" were ambiguous).

6           **2.      Standards Pertaining to Exclusionary Provisions.**

7           Specific legal standards govern the Court's review of the application of an exclusionary

8   provision such as the Plan's mental illness limitation.  First, an exclusionary provision must be

9   "clear, plain, and conspicuous" in order to be enforceable against a participant in an insured

10  ERISA plan.  *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 387 (9th Cir. 1994).

11          Second, the burden is on the Plan to show applicability of the mental illness limitation.  "It

12  is a basic rule of insurance law that the insured carries the burden of showing a covered loss has

13  occurred and *the insurer must prove facts that bring a loss within an exclusionary clause of the*

14  *policy*."  *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir. 1992)

15  (emphasis added).  Federal courts have adopted this basic rule as a principle of federal common

16  law applicable to the interpretation of ERISA-governed insurance contracts.  *See, e.g.*, *Santaella v.*

17  *Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997); *Jenkins v. Montgomery Indus.*,

18  *Inc.*, 77 F.3d 740, 743 (4th Cir. 1996); *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1007

19  (10th Cir. 2004); *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir.

20  2004).  Likewise, under California law, the insurer bears the burden of proving the applicability of

21  a policy's limitation provision.  *HS Services, Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 644-

22  45 (9th Cir. 1997) (citing *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 880, 151 Cal. Rptr. 285

23  (1978).).[5]

24          Third, a limitation provision must be strictly and narrowly construed.  *HS Services, Inc.*,

25  109 F.3d at 45.  Thus, the Plan's burden on this motion is to show that, applying a strict and

26

27          [5]  Principles of state insurance law govern interpretation of policies insuring ERISA plans.
    *See Unum v. Ward*, 526 U.S. 358, 373 (1999).

28

1  narrow construction of the Plan's definition of "mental illness," there exists no genuine issue of

2  material fact that Bipolar Disorder falls within that definition.  The Plan cannot carry this burden.

3      **3.**    **Standard of Review of ERISA Benefit Claims.**

4        The default standard of review of an ERISA plan administrator's benefits decision is *de*

5  *novo*, unless the administrator is vested with "discretionary authority to determine eligibility for

6  benefits or to construe the terms of a plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

7  115 (1989).  If the administrator is vested with discretion under the terms of the plan, then its

8  decisions will be reviewed for abuse of discretion; however, "if a benefit plan gives discretion to an

9  administrator or fiduciary who is operating under a conflict of interest, that conflict must be

10  weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Id.*  (citation

11  omitted).  Although the Plan here contains language purporting to confer discretion on Hartford,

12  abuse of discretion review is incompatible with the rule placing the burden on the insurer to show

13  applicability of an exclusionary clause.  Therefore, the appropriate standard of review is de novo.

14        Even if abuse of discretion review applies, Hartford's dual role as both the claim decision-

15  maker and payor constitutes a "structural conflict of interest" that the Court must weigh in

16  applying abuse of discretion review. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th

17  Cir. 2007).[6]  A plan administrator's decision cannot be upheld on abuse of discretion review if its

18  decision conflicts with the plan terms or is based on erroneous findings of fact.  *Taft v. Equitable*

19  *Life Assur. Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1994).

20  **B.**    **The Plan's Limitation on Benefits for Mental Illness Is Unenforceable Because It Is**

21          **Not "Clear, Plain, and Conspicuous."**

22        The Plan's 24-month limitation on benefits for disabilities caused by mental illness cannot

23  be enforced against Plaintiff because it is not "clear, plain, and conspicuous." *See Saltarelli*, 35

24  F.3d at 387.  Application of this principle "appropriately serves the federal policies underlying

25  ERISA, including provision of adequate information to plan participants and protection of their

26  ―――――――――――――

27       [6]  The appropriate standard of review in cases involving such "dual role administrators" is
the subject of a pending Supreme Court case. *MetLife v. Glenn*, 128 S. Ct. 1117 (2008) (granting

28  certiorari).  *MetLife* was argued on April 23, 2008.

interests." *Id*. at 386.  The mental illness limitation in the Plan fails this test.

In *Saltarelli*, a pre-existing conditions exclusion appeared in the definitions section of the plan summary and the summary's table of contents did not contain a heading for the exclusion.  *Id*. at 385.  As a result, the provision was "not conspicuous enough to attract the attention of a reasonable layman."  *Id*.  As in *Saltarelli*, in this case the 24-month limitation is "buried" in a section that appears to be conferring benefits, not taking them away.  As noted above, the heading under which the limitation appears is "Mental Illness and Substance Abuse Benefits," implying that the provision grants benefits rather than restricting them.  (H564.)

Also as in *Saltarelli*, the Plan's table of contents contains no heading for the mental illness limitation.  (H547.)  Although the table contains a heading for "Exclusions," the mental illness limitation is not covered in this section.  (H547, H558.)  Instead, as noted above, the Plan's definitions section specifically *includes* "mental illness" in the definition of "Total Disability," and the section describing when disability benefits cease does *not* include expiration of the mental illness limitation.  (H555, H563.)  Thus, the 24-month limitation in the "Mental Illness and Substance Abuse Benefits" section actually contradicts other, plainer provisions of the Plan.  Not only is the limitation not "clear, plain, and conspicuous," but the Plan as a whole is downright misleading.  Accordingly, the 24-month limitation cannot be enforced against Plaintiff, and the Plan is not entitled to summary judgment.

**C.     The Plan Cannot Carry Its Burden to Prove Facts Showing That Bipolar Disorder Is a "Mental Illness" Under Its Terms.**

Unlike the typical long-term disability benefits case, in which the burden is on the plan participant to prove disability, the sole issue in this case is whether Plaintiff's disability arising from Bipolar Disorder is covered by the Plan's mental illness limitation on benefits for disabilities due to "mental illness," as that term is defined in the Plan.  As noted above, because the mental illness limitation is a limitation on coverage, the burden is on the Plan to prove by a preponderance of the evidence facts supporting application of the limitation. The Plan cannot carry this burden under the current state of medical science and the law.

1.    **Under the Current State of Medical Science, Bipolar Disorder Is Not a "Psychological, Behavioral or Emotional Disorder or Ailment of the Mind."**

Medical and legal consensus establishes that Bipolar Disorder is not a "psychological, behavioral or emotional disorder or ailment of the mind," but rather is a neurobiological condition with a strong genetic component. Under the strict and narrow construction required for exclusionary clauses, *HS Services,* 109 F.3d at 644-45, Bipolar Disorder is not a "mental illness" within the meaning of the Plan.

As explained above, Bipolar Disorder is a biological disorder of the brain that is genetically influenced, treated with anticonvulsant medications, strongly associated with thyroid abnormalities, and reflected in differences in the brain that are visible on imaging. Consequently, courts interpreting mental illness limitations have recognized that, at a minimum, genuine issues of material fact exist as to the physical nature of Bipolar Disorder. *See Fitts v. Unum Life Ins. Co. of Am.*, – F.3d –, 2008 WL 819999 (D.C. Cir. Mar. 28, 2008) (vacating summary judgment for plaintiff and remanding for further proceedings). In *Arkansas Blue Cross & Blue Shield, Inc. v. Doe*, 733 S.W.2d 429 (1987) (en banc), the court found that Bipolar Disorder was not within a plan's exclusion for "mental or psychiatric conditions" but was a physical condition. *Id.* at 431-32. In *Rosenthal v. Mut. Life Ins. Co. of NY*, 732 F. Supp. 108 (S.D. Fla. 1990), the court denied the defendant's motion for summary judgment, because "reasonable persons could find that Bipolar Affective Disorder is a physical illness which manifests itself through mental symptoms." *Id.* at 110-11.

All of the cases involving Bipolar disorder upon which the Plan relies are inapposite. *Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104 (2d Cir.2005), conflicts with Ninth Circuit precedent. In examining a similar mental illness limitation provision where terms such as "mental disorder" were undefined, the Ninth Circuit reached an opposite decision. In *Patterson*, the Ninth Circuit reviewed a provision that limited benefits for disabilities "caused by or resulting from . . . [m]ental, nervous, nervous or emotional disorder of any type" where the plan at issue provided no definition of "mental disorder" or illustrations of conditions that fell within or outside the provision. 11 F.3d at 950 (internal quotation marks omitted; alteration in original). Because the

1    plan did not "specify whether a disability is to be classified as 'mental' by looking to the cause of

2    the disability or its symptoms," the Ninth Circuit held that where a mental illness limitation

3    provision is ambiguous, a disability falls outside the provision so long as the disorder has a physical

4    cause or physical symptoms.  *Id*. at 950-51 (reversing judgment for plan).  In *Fuller*, the mental

5    illness limitation provision at issue limited benefits to eighteen months if the disability "'arises from

6    a mental or emotional disease or disorder.'"  *Id*. at 106 (quoting plan provision).   The plan at issue

7    did not define the term "mental or emotional disease or disorder."  While acknowledging that "[i]t

8    may well be that bipolarity is a manifestation of a chemical or electrical reaction in the brain and

9    that it may be said to arise ultimately from a physical cause," the Second Circuit held that Bipolar

10   Disorder fell under the plan's limitation provision, without engaging in any inquiry regarding the

11   cause or symptoms of the claimant's Bipolar Disorder.  *Id*. at 107.  Thus, *Fuller*, which conflicts

12   with *Patterson*, should not be followed.

13        *Vega-Muniz v. Metropolitan Life Insurance Company*, 278 F. Supp. 2d 146 (D.P.R.

14   2003), and *Equitable Life Assurance Society of the United States v. Berry*, 212 Cal. App. 3d 832

15   (1989), are inapposite for the same reason.  The plan at issue in *Vega-Muniz* defined "mental

16   illness" as a "mental, emotional, or nervous condition of any kind" where "mental, emotional, or

17   nervous condition" was undefined.  278 F. Supp. 2d at 148.   Ruling in favor of the plan, the court

18   did not conduct or direct any inquiry into the cause or the symptoms of the claimant's Bipolar

19   Disorder.  In *Berry*, the policies at issues excluded "Mental or nervous disorders" and "Mental or

20   nervous treatment" for "a neurosis, pyscho-neurosis, psychopathy, psychosis, or mental or nervous

21   disease or disorder of any kind," where terms such as "mental disorders" and "nervous disorders"

22   were undefined.  212 Cal.App.3d, at 835.  Citing no authorities and despite the ambiguities of the

23   undefined terms, the court held that "[m]anifestation, not cause" served as the "yardstick" by

24   which to determine whether a condition fell under a limitation provision.[7]  *Id*. at 840.

25   _____

26        [7] The Plan argues that *Fuller*, *Vega-Muniz*, and *Berry* show that the cause of a disorder is
     irrelevant if the policy in question does not define "mental illness" in terms of causes.  Opening
27   Brief, at 17.  The Plan's argument is erroneous because it disregards *Patterson*, according to
     which ambiguities in mental limitation provision are to be resolved by looking to the cause or
28   PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
     TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [CASE NO. C07-05875 WHA]                    11

For this reason, the Plan's reliance on the DSM-IV-TR to show that the American Psychiatric Association characterizes Bipolar Disorder based on symptoms rather than cause is misguided. The question in this case is whether Bipolar Disorder is within the Plan's definition of "mental illness," not whether the condition is within the American Psychiatric Association's definition. Moreover, the American Psychiatric Association has cautioned that "a diagnosis does not carry any necessary implications regarding the causes of the individual's mental disorder or its associated impairments." DSM-IV-TR, at xxxiii.

At a minimum, genuine issues of material fact exist as to whether Bipolar Disorder fits within the Plan's definition of mental illness, precluding summary judgment for the Plan.

### 2.    Under Governing Ninth Circuit Law, the Plan Defines "Mental Illness" With Respect to the Cause of the Condition.

Courts applying insurance policies' mental illness limitations to conditions such as Bipolar Disorder look to whether the contract at issue defines "mental illness" with respect to the cause of the condition or its symptoms. *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993). Here, the Plan defines "mental illness" by looking to the cause of the condition at issue.

Under a strict and narrow interpretation of the Plan's mental illness benefits provision, the definition of "mental illness" expressly includes physical manifestations of mental conditions – namely, "physical manifestations of psychological, behavioral or emotional disorders," and expressly excludes mental manifestations of a physical cause, "demonstrable, structural brain damage." In other words, under the Plan's terms, a disability that is due to physical symptoms or "manifestations" can be a "mental illness" if it has a psychological, behavioral, or emotional cause. However, a disability will not be a "mental illness" under the Plan's terms if it has a physical cause, such as brain damage, even if it has psychological, behavioral, or emotional symptoms.

The Plan's definition of "mental illness" is thus in accord with the common-sense understanding of "mental illness" as referring to "a behavioral disturbance with no demonstrable

---

symptoms of the disability. The cause of the disorder *is* relevant. 11 F.3d at 950.

1   organic or physical basis." *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 538 (9th Cir.

2   1990). Had Hartford desired to include in the definition of "mental illness" behavioral or

3   emotional manifestations of physical conditions, it clearly was able to do so. Instead, Hartford

4   chose to explicitly include in "mental illness" physical manifestations of behavioral or emotional

5   conditions, but *not* to include behavioral or emotional manifestations of physical conditions.

6   Because there is, at a minimum, a genuine issue of material fact as to whether Bipolar Disorder

7   falls in the latter category, the Plan's motion for summary judgment should be denied.

8          **3.    The Plan's Reliance on the Language "Mental Illness That Results From Any
           Cause" And "Any Condition That May Result From Mental Illness" Is
9          Unavailing.**

10         The Plan's reliance on the language "Mental Illness that results from any cause" and "any

11  condition that may result from Mental Illness" in the Plan's mental illness benefits provision is

12  unavailing because these terms only apply to conditions that meet the basic definition of "mental

13  illness." As stated above, the Plan's definition of "Mental Illness" is cause-based, including

14  "physical manifestations" of mental disorders and impliedly excluding mental manifestations of

15  physical disorders. At a minimum, the "from any cause" language creates an ambiguity in the Plan

16  as to whether the nature of a condition as a "mental illness" is to be determined by looking to the

17  cause or the symptoms of the condition. *See Kunin*, 910 F.2d at 540. On *de novo* review, that

18  ambiguity must be resolved in favor of Plaintiff. *Id.*

19  **D.       Hartford's Decision to Terminate Plaintiff's Benefits and Interpretation of the
           Plan's Terms Should Be Reviewed *De Novo*.**

20

21         Although the Plan contains language conferring discretion on Hartford "to determine

22  eligibility for benefits and to construe and interpret all terms and provisions" of the Plan (H568),

23  under the circumstances of this case, Hartford's decision to terminate Plaintiff's benefits and

24  interpretation of the Plan should be reviewed not for abuse of discretion but *de novo*. This is so

25  because, as stated above, Hartford bears the burden of proving that the mental illness limitation

26  applies and because during the claim process, Hartford failed to exercise discretion to interpret the

27  Plan provision at issue.

28

First, as set forth above, the Plan bears the burden of showing that the mental illness limitation of the Plan applies to Bipolar Disorder. Because it is the Plan's burden, not Plaintiff's, to make this showing, it logically follows that no deference should be afforded Hartford's decision to terminate Plaintiff's benefits or interpretation of the Plan's terms. *Cf. HS Services, Inc.,* 109 F.3d at 644-45.

Second, Hartford failed to exercise the discretion conferred upon it as to the issue raised by denying Plaintiff's request for review and by this case: whether Bipolar Disorder is a "mental illness" within the meaning of the Plan. An administrator's discretionary plan interpretation is entitled to deference only to the extent that discretion was exercised in accordance with the plan's terms. *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003). In particular, a plan participant may not be "sandbagged" by a rationale for denying her claim that the plan administrator adduces only after the suit has commenced. *Id.* at 1104 (9th Cir. 2003) (citing *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998)). A plan administrator's decision cannot be upheld on abuse of discretion review based on arguments or rationales that did not form the basis of the exercise of discretion in the claim process, because to do so would "contravene[] the purpose of ERISA." *Abatie*, 458 F.3d at 974. In short, the Court cannot defer to an exercise of discretion that never occurred.

Here, the administrative record is devoid of any analysis or rationale articulated by Hartford for determining that Bipolar Disorder is a "mental illness" within the meaning of the Plan. Although the Plan now relies on DSM-IV, there is no reference to DSM-IV in the administrative record and not the slightest indication that Hartford consulted DSM-IV or any other authority to determine whether Bipolar Disorder fit the Plan's description of a "mental illness." As set forth above, Plaintiff's request for review squarely raised the question whether Bipolar Disorder was a "mental illness," and Hartford recognized this issue. However, Hartford denied the request for review on a completely different ground, now abandoned: that Plaintiff did not exhibit physical

1    manifestations of Bipolar Disorder that limited her functionality.[8]  Hartford conducted no

2    investigation and reached no conclusion on the issue raised in Hartford's April 5, 2007 letter and

3    addressed in Plaintiff's request for review.

4        Thus, Hartford, during the claim process, failed to exercise the discretion conferred upon it

5    to determine the question of whether Bipolar Disorder fell under the Plan's definition of "mental

6    illness."  In fact, Hartford failed to address that question despite the fact that it understood that

7    Plaintiff challenged Hartford's application of the mental illness limitation to her condition.

8    Furthermore, despite that knowledge, Hartford did not provide UDC with the definition of "mental

9    illness" in the Plan or instruct UDC to examine whether Plaintiff's Bipolar Disorder fell under that

10   particular definition.  (H064-65.)  Because Hartford failed to decide whether Bipolar Disorder is a

11   "mental illness" or a physical condition, there is no discretionary decision to which the Court can

12   defer.  Accordingly, Plaintiff's claim should be reviewed *de novo*.

13   **E.    If the Court Determines That the Applicable Standard of Review Is Abuse of
         Discretion, Evidence in the Record Supports a High Degree of Skepticism and
14       Plaintiff Should Be Permitted to Conduct Discovery Going to Hartford's Conflict of
         Interest.**
15

16       Evidence in the record demonstrates that Hartford's conflict of interest infected its decision

17   to terminate Plaintiff's benefits.  In addressing Plaintiff's request for review, Hartford used the

18   services of UDC, which was recently recognized as

19       a company which Hartford knows benefits financially from doing repeat business with it,
         collecting more than thirteen million dollars from Hartford since 2002.  It follows that
20       Hartford knows that UDC has an incentive to provide it with reports that will increase the
         chances that Hartford will return to UDC in the future – in other words, reports upon
21       which Hartford may rely in justifying its decision to deny benefits to a Plan participant.

22   *Caplan v. CNA Finanicial Corp.*, – F. Supp. 2d –, 2008 WL 928656, at *6 (N.D. Cal. Apr.4,

23   2008).  For this reason, the *Caplan* court reviewed Hartford's decision with "commensurate

24   skepticism" and found an abuse of discretion.  *Id.* at *8.

25   _____

26       [8]  Indeed, by basing its decision on the finding that Plaintiff did not suffer from physical
     manifestations of Bipolar Disorder, Hartford necessarily conceded that Bipolar Disorder is *not* a
27   "psychological, behavioral or emotional disorder."   This is so because, under the terms of the
     Plan, if Bipolar Disorder were "psychological, behavioral or emotional," it would make no
28   difference for Plan purposes whether Plaintiff's condition had physical manifestations.

1    In addition, Hartford's claims handlers noted that if Plaintiff's claim was approved, the

2    decision would have to be referred "to Director level." (H16.) Because this note immediately

3    follows a notation of Plaintiff's compensation (which entitled her to the maximum Plan benefit of

4    $15,000 per month), it appears that Hartford gave Plaintiff's claim special scrutiny because of the

5    large amount of her benefit. Although the claim file shows that the claim did receive "director

6    sign-off," there is no documentation of the reason for the director sign-off or what that process

7    entailed. Hartford also referred to the policy insuring the plan as "cancelled" and "terminated"

8    (H103), suggesting that Hartford's financial conflict was complicated by Credit Suisse having

9    subsequently cancelled its policy with Hartford. Plaintiff should be permitted discovery going to

10   these issues.[9]

11   As discussed above, the administrative record also indicates that Plaintiff's file was

12   reviewed by Bruce Luddy, who apparently had ultimate responsibility for the long-term disability

13   appeals operation. However, the record contains no documentation of the reasons for or outcome

14   of Mr. Luddy's review. Likewise, the diary pages initially omitted from the administrative record

15   indicate that the Appeals Specialist would "discuss with Bruce" Plaintiff's argument that Bipolar

16   Disorder was not a "mental illness." However, the record contains no documentation of this

17   discussion. Plaintiff should be permitted to conduct discovery going to these issues.

18   Finally, and most fundamentally, Plaintiff should be permitted to conduct discovery going

19   to the reason for Hartford's characterization of Bipolar Disorder as a "mental illness." Plaintiff

20   should be permitted to discover whether Hartford has any guidelines, policies, or manuals

21   providing direction to its claims handlers on application of the "mental illness" limitation to Bipolar

22   Disorder, as well as to other conditions with physical causes and behavioral or emotional

23   symptoms, such as dementia and stroke. This information goes to the appropriate level of

24   skepticism by addressing whether Hartford had a reasoned basis for applying the "mental illness"

25   limitation to Bipolar Disorder in Plaintiff's case and whether it applies that basis consistently to

26

27

28
_____

[9]  Plaintiff's proposed discovery requests are attached to the Declaration of Vincent Cheng
in Support of Plaintiff's Fed. R. Civ. P. 56(f) Request, submitted herewith.

conditions with physical causes and behavioral or emotional symptoms. Because heightened skepticism applies and Plaintiff should be permitted to take discovery going to the appropriate level of skepticism, the Plan's motion should be denied.

**F.     Plaintiff's Claim Should Not Be Remanded.**

The Plan requests that Plaintiff's claim be remanded to Hartford for a determination whether Plaintiff has remained disabled within the meaning of the Plan since her benefits were terminated. This request should be denied. There has been no intervening change in the standard of disability; it remains "own occupation." Plaintiff has been continuously disabled under the much stricter standard of the Social Security Administration since October 2001. As a result, if the mental illness limitation does not apply, there is no remaining issue as to the merits of Plaintiff's claim. For this reason, the cases relied on by the Plan are inapposite. *See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (remanding to plan administrator to determine "merits" of claim); *Patterson*, 11 F.3d at 951 (remanding to plan administrator to determine remaining issue regarding cause or symptoms of disorder).

**G.     Conclusion.**

On *de novo* review, for the reasons provided above, the Plan is not entitled to judgment as a matter of law. At a minimum, under the current state of medical science and the law, the Plan cannot carry the burden showing that no genuine issue of fact exists as to whether Bipolar Disorder is a "mental illness" within the meaning of the Plan. Plaintiff has presented credible evidence that Bipolar Disorder is a physical condition that is treated with medication and has a genetic component. Plaintiff's medical history demonstrates that her Bipolar Disorder is a physical illness with behavioral and emotional manifestations.[10]

---

[10]  Under *de novo* review, Plaintiff should also be allowed to introduce her 2007 magnetic resonance imaging showing structural damage to her brain. In *Mongeluzo*, the Ninth Circuit determined that "additional evidence is necessary to conduct de novo review of the benefit decision" where the new evidence does not constitute "a new claim, but simply a new explanation for [the claimant's] disability." 46 F.3d at 944. The Ninth Circuit stated that "[c]onsideration of that explanation is part of the determination of whether physical causes or physical symptoms were in whole or in part a cause of [the claimant's] disability such that benefits must be paid." *Id*. Similarly, here, under *de novo* review, introduction of the magnetic resonance imaging does not

1    If abuse of discretion review applies, Plaintiff should be permitted to take discovery going

2   to the appropriate level of skepticism to be applied under *Abatie*.  Applying skeptical review, there

3   exists, at a minimum, a genuine issue of material fact as to whether Hartford's decision that

4   Bipolar Disorder is a "mental illness" was contrary to the terms of the Plan and based on clearly

5   erroneous findings of fact, because Plaintiff has presented evidence that Bipolar Disorder is a

6   physical illness.  Accordingly, the Plan's motion for summary judgment should be denied.

7   Dated:   May 8, 2008                              Respectfully submitted,

8                                                     LEWIS, FEINBERG, LEE,
                                                      RENAKER & JACKSON P.C.
9

10                                      By:   /s/ Teresa S. Renaker
                                              Teresa S. Renaker
11                                            Vincent Cheng

12                                            Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   present "a new claim" but simply an "explanation" for Plaintiff's Bipolar Disorder, and thus
     should be allowed.