Teresa S. Renaker – CA State Bar No. 187800
Vincent Cheng – CA State Bar No. 230827
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
E-mail: trenaker@lewisfeinberg.com
        vcheng@lewisfeinberg.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LARA DOE, a fictitious name, | Case No. C07-05875 WHA |
| Plaintiff, | |
| vs. | **PLAINTIFF'S CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| GROUP LONG TERM DISABILITY BENEFITS PLAN FOR EMPLOYEES OF CREDIT SUISSE FIRST BOSTON CORPORATION, | **[Pagination corrected; no changes to text]** |
| Defendant. | Date:    May 29, 2008 |
| | Time:    8:00 a.m. |
| | Dept:    Courtroom 9, 19th Floor |
| | Judge:  Honorable William H. Alsup |

# TABLE OF CONTENTS

Page No.

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    Plaintiff's Occupation and Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.    Nature of Bipolar Disorder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        C.    Pertinent Plan Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        D.    Plaintiff's Claim for Disability Benefits Under the Plan . . . . . . . . . . . . . . . 5

IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.    Applicable Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              1.    Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              2.    Standards Pertaining to Exclusionary Provisions . . . . . . . . . . . . . . . 8

              3.    Standard of Review of ERISA Benefit Claims . . . . . . . . . . . . . . . . . . 9

        B.    The Plan's Mental Illness Limitation Provision Is Unenforceable Because It Is
              Not "Clear, Plain, and Conspicuous." . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.    The Plan Cannot Carry Its Burden to Prove Facts Showing That Bipolar
              Disorder Is a "Mental Illness" Under Its Terms . . . . . . . . . . . . . . . . . . . . 11

              1.    Under the Current State of Medical Science, Bipolar Disorder Is Not a
                    "Psychological, Behavioral or Emotional Disorder or Ailment of the
                    Mind." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              2.    Under Governing Ninth Circuit Law, the Plan Defines "Mental Illness"
                    With Respect to the Cause of the Condition. . . . . . . . . . . . . . . . . . . 14

              3.    The Plan's Reliance on the Language "Mental Illness That Results From
                    Any Cause" And "Any Condition That May Result From Mental Illness" Is
                    Unavailing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        D.    Hartford's Decision to Terminate Plaintiff's Benefits and Interpretation of the Plan
              Should Be Reviewed *De Novo*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        E.    If the Court Determines That the Applicable Standard of Review Is Abuse of
              Discretion, Evidence in the Record Supports a High Degree of Skepticism and
              Plaintiff Should Be Permitted to Conduct Discovery Going to Hartford's Conflict
              of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        F.    Plaintiff's Claim Should Not Be Remanded . . . . . . . . . . . . . . . . . . . . . . . 18

        G.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1

## TABLE OF AUTHORITIES

2

**Federal Cases**                                                    Page No.

3   Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2007).. . . . . . . . . . . . . . . . . . . 10

4   Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5   Celotex Corp. v. Catrett, 477 U.S. 317 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6

7   Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246 (2d Cir. 2004).. . . . . . . . . . . 9

8   Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101(1989).. . . . . . . . . . . . . . . . . . . . . . . . 9

9   Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997 (10th Cir. 2004). . . . . . . . . . . . . . . . . 9

    HS Services, Inc. v. Nationwide Mut. Ins. Co., 109 F.3d 642 (9th Cir. 1997). . . . . . . . . . . . . 9
10

11  Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan,
        349 F.3d 1098 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12  Jenkins v. Montgomery Indus., Inc., 77 F.3d 740 (4th Cir. 1996).. . . . . . . . . . . . . . . . . . . . . 9

13  McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1205 (10th Cir. 1992).. . . . . . . . . 9

14  Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938
        (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
15

16  Rosenthal v. Mut. Life Ins. Co. of NY, 732 F.Supp. 108, 110-11 (S.D. Fla. 1990). . . . . . . . . 12

17  Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382 (9th Cir. 1994).. . . . . . . . . . . . . . 8

    Santaella v. Metropolitan Life Ins. Co., 123 F.3d 456 (7th Cir. 1997). . . . . . . . . . . . . . . . . 9
18

19  Scott v. Harris, - U.S. -, 127 S. Ct. 1769, 1774 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

20  Taft v. Equitable Life Assur. Soc'y, 9 F.3d 1469 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 10

21  Vega-Muniz v. Metropolitan Life Insurance Company, 278 F. Supp. 2d 146 (D.P.R. 2003)    13

    **State Cases**
22

23  Arkansas Blue Cross & Blue Shield, Inc. v. Doe, 733 S.W.2d 429 (1987) (en banc). . . . . . . . 12

24  Equitable Life Assurance Society of the United States v. Berry,
        212 Cal. App. 3d 832 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

25  **Federal Statutes**

26  ERISA § 2, 29 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

27

28

## I.  INTRODUCTION

This action under ERISA[1] is about whether Bipolar Disorder, the medical condition that renders Plaintiff disabled, falls within the definition of "mental illness" in the Defendant Group Long Term Disability Benefits Plan for Employees of Credit Suisse First Boston Corporation ("the Plan").  The Plan is an ERISA-governed welfare benefit plan sponsored by Credit Suisse First Boston Corporation ("Credit Suisse") and insured by Hartford Life Insurance Company ("Hartford").  The Plan defines "mental illness" as a "psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorders, but excluding demonstrable, structural brain damage."

Plaintiff has been disabled by Bipolar Disorder since October 2001.  On April 5, 2004, Hartford terminated Plaintiff's benefits, invoking the Plan's 24-month limitation on benefits where disability is due to "mental illness."  In October 2004, Plaintiff requested review of the termination of her benefits, arguing that Bipolar Disorder was not a "psychological, behavioral or emotional disorder or ailment of the mind," but was a physical disorder of the brain.  Two months later, Hartford informed Plaintiff that it had decided to uphold its April 2004 determination on the ground that she had not shown that she had "physical manifestations" of Bipolar Disorder that were disabling.  Because the Plan's definition of mental illness includes physical manifestations of psychological, behavioral or emotional disorders, Hartford's response failed to address the issue raised by Plaintiff.  In fact, throughout the claim process, Hartford never offered any rationale or analysis to support its conclusion that Bipolar Disorder is a "mental illness" within the meaning of the Plan rather than a physical disorder.

Attempting to remedy this deficiency in litigation, the Plan's Motion for Summary Judgment employs a two-pronged strategy.  First, the Plan argues that the Plan's definition of "mental illness" ignores the cause of the disorder in question.  That is incorrect.  The definition specifically includes physical symptoms that have a mental cause, and excludes brain damage.  Despite this specificity, the definition does not expressly include other physical conditions with emotional or behavioral symptoms, such as Bipolar Disorder.  Second, by repeatedly citing

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

1   Plaintiff's psychological symptoms and referencing the DSM-IV, Hartford seeks to obscure the

2   well-supported medical fact that Bipolar Disorder is a physical condition.

3          It is well-established that the limiting provision must be clear, plain, and conspicuous to be

4   enforced; that the burden is on the Plan to establish that an exclusionary provision applies; and that

5   an exclusionary provision must be strictly and narrowly construed.  Applying these standards, the

6   Plan has not shown and cannot show that no genuine issue of material fact exists as to whether

7   Bipolar Disorder is a "mental illness" within the meaning of the Plan.  The Court should apply *de*

8   *novo* review in light of Hartford's failure to decide this issue on Plaintiff's request for review.  If

9   abuse of discretion review applies, then Plaintiff should be permitted to take discovery going to the

10  appropriate level of skepticism to be applied to Hartford's decision.

11                      **II.  STATEMENT OF ISSUES TO BE DECIDED**

12     1.    Whether the 24-month mental illness limitation fails to satisfy the requirement that

13           exclusionary provisions be "conspicuous, plain, and clear" and is therefore

14           unenforceable against Plaintiff;

15     2.    If the limitation is "conspicuous, plain, and clear," whether the Plan has carried its

16           burden to show the absence of any genuine issue of material fact that Bipolar

17           Disorder is within the Plan's definition of "mental illness";

18     3.    Whether Hartford failed to make a discretionary determination on Plaintiff's request

19           for review as to whether Bipolar Disorder is a "mental illness," rendering de novo

20           review appropriate, and whether on de novo review, genuine issues of material fact

21           preclude summary judgment for the Plan; and

22     4.    If abuse of discretion review is appropriate, whether Plaintiff should be permitted to

23           conduct discovery going to the standard of review, including discovery into

24           information omitted from the administrative record.

25                           **III.  STATEMENT OF FACTS**

26  **A.    Plaintiff's Occupation and Disability.**

27          Plaintiff has more than ten years' employment experience providing banking, brokerage,

28

1   advice, and other financial services to high net-worth individuals. (H272; H356-58)[2]  She was

2   employed by Credit Suisse beginning January 2001 as Vice President in the company's Private

3   Client Services Group. (H356; H426.)  Plaintiff worked as a financial advisor and stock broker,

4   advising Credit Suisse clients on large-scale financial transactions, as well as on insurance

5   investments and the purchase and sale of securities. (H354; H356.)  She was responsible for

6   management of assets in the hundreds of millions of dollars and had discretionary authority on

7   several Credit Suisse client accounts. (H356.)

8        In addition to specialized knowledge relating to investments, Plaintiff's position as Vice

9   President in Credit Suisse' Private Client Services Group required interpersonal skills necessary to

10  work closely with individuals on their financial planning, to attract and retain clients, and to work

11  with other professionals on clients' financial matters. (H354; H364.)  Managing client portfolios

12  on a daily basis while keeping abreast of financial developments demanded intense concentration

13  and focus, and the ability to make good judgment under severe time pressure. (H354; H364.)

14        According to the notes of Dr. Stuart M. Gold, Plaintiff's psychiatrist at that time, in the

15  spring of 2001, Plaintiff began to exhibit symptoms that resulted in the diagnosis of Bipolar

16  Disorder, Type II, with the diagnostic code 296.89. (H277-285).)  Her doctor was particularly

17  concerned about her ability to manage significant financial assets for her clients in accordance with

18  her fiduciary duties. (H311.)  By October 2001, she had become unable to function in her job.

19  Plaintiff went on a leave of absence starting October 29, 2001, and terminated her employment

20  with Credit Suisse effective December 28, 2001. (H356, H421.)   The Social Security

21  Administration found Plaintiff totally disabled as of October 2001.  Likewise, Hartford's

22  Behavioral Health Case Manager concluded that it was unlikely that Plaintiff would be able to

23  return to her pre-disability level of functioning. (H490.)

24  **B.    Nature of Bipolar Disorder.**

25        According to the National Insitutes of Health, Bipolar Disorder "is a brain disorder that

26  _____

27        [2] All references to "H [number]" herein are to the Bates numbers of the documents that
    Defendant manually filed with the Court on April 24, 2008. (*See* Dkt 38 (Defendant's Notice of
28  Manual Filing of Administrative Record in Connection with Defendant Plan's Motion for
    Summary Judgment (ERISA)).)

1   causes unusual shifts in a person's mood, energy, and ability to function." (Plaintiff's Request for

2   Judicial Notice ("RJN"), Exh. C, p. 2.)   "'It is an illness that is biological in its origins, yet one that

3   feels psychological in the experience of it.'" (*Id.* (quoting Kay Redfield Jamison, Ph.D., *An*

4   *Unquiet Mind*, at 6 (1995).)   Key characteristics of Bipolar Disorder support the conclusion that

5   its causes are physical.  First, studies indicate that Bipolar Disorder has a genetic link.  The DSM-

6   IV-TR, relied on by the Plan, cites a familial pattern in Bipolar Disorder and notes that twin and

7   adoption studies "provide strong evidence of a genetic influence" for Bipolar Disorder.

8   AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL DISORDERS,

9   FOURTH EDITION, TEXT REVISION ("DMS-IV-TR"), 395 (2000); *see* PINCUS & TUCKER,

10  BEHAVIORAL NEUROLOGY (4th ed.), at 218 ("Bipolar disorder is probably transmitted as an

11  autosomal dominant.").  Plaintiff's family psychiatric history, documented in the claim record,

12  bears out this proposition. (H50, H490.)

13       Second, Bipolar Disorder is treated with medications, including medications that are also

14  used to treat conditions that would conventionally be characterized as physical. (RJN Exh. C, at

15  13.)  For example, Plaintiff's treatment is primarily pharmacologic management, including

16  prescriptions for anticonvulsant medications such as Depakote and Topomax, which are indicated

17  for prevention of epileptic seizures and migraine headaches. (H81-95, H116-31, H175-87, H190;

18  *see* RJN, Exh. B.)  Psychotherapy can help patients cope with Bipolar Disorder, but is used in

19  addition to medication, not instead of medication. (RJN Exh. C, at 17.)

20       Third, Bipolar Disorder is associated with abnormal thyroid gland function. (RJN Exh. C,

21  at 16.)  This is particularly so in patients, like Plaintiff, who exhibit rapid cycling. (*Id.*)  Plaintiff

22  has been diagnosed with hypothyroidism since age 16. (H178, H181.)  Fourth, brain-imaging

23  studies have identified differences between the brains of people with Bipolar Disorder and the

24  brains of healthy individuals. (RJN Exh. C, at 11-12.)  In Plaintiff's case, an MRI shows "global

25  parenchymal volume loss," meaning loss of volume of brain matter. (Declaration of Vincent

26  Cheng in Support of Plaintiff's Memorandum of Points and Authorities in Opposition to

27  Defendant's Motion for Summary Judgment ("Cheng Decl."), Exh. A.)

28  //

**C.      Pertinent Plan Provisions.**

Benefits are payable under the Plan to a participant who is totally disabled, defined as follows:

**Total Disability** or **Totally Disabled** means you are prevented by:

(1)     accidental bodily injury;
(2)     sickness;
(3)     mental illness;
(4)     substance abuse; or
(5)     pregnancy,
from performing the essential duties of your occupation . . . .

(H555.)  For a participant who, like Plaintiff, becomes disabled prior to reaching age 60, the maximum duration of benefits is to the first of the month after the participant's 65th birthday. (H550.)  Benefits can terminate under any of six circumstances:

**When will benefits terminate?**

We will cease benefit payment on the first to occur of:
(1)     the date you are no longer Disabled;
(2)     the date you fail to furnish proof, when requested by us, that you continue to be Disabled;
(3)     the date you are no longer under the Regular Care of a Physician, or refuse to be examined by a Physician, if we require such an examination;
(4)     the date you die;
(5)     the date determined from the Maximum Duration of Benefits Table shown in the Schedule of Insurance; or
(6)     the date your Current Monthly Earnings exceed 80% of your Indexed Pre-Disability Earnings.

(H563.)  It is undisputed that none of these events had occurred with respect to Plaintiff as of the time that Hartford ceased making benefit payments to her.  Nontheless, Hartford terminated Plaintiff's benefits on the basis of the following provision:

**MENTAL ILLNESS AND SUBSTANCE ABUSE BENEFITS**

**Are benefits limited for Mental Illness or substance abuse?**

If you are Disabled because of:

(1)     Mental Illness that results from any cause;
(2)     any condition that may result from Mental Illness;
(3)     alcoholism; or
(4)     the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance,

then, subject to all other Policy provisions, benefits will be payable:

(1)    only for so long as you are confined in a hospital or other place licensed to provide medical care for the disabling condition; or

(2)    when you are not so confined, a total of 24 months for all such Disabilities during your lifetime.

**Mental Illness** means any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorder, but excluding demonstrable brain damage.

(H564.)

D.    **Plaintiff's Claim for Disability Benefits Under the Plan.**

By letter dated September 25, 2002, Hartford informed Plaintiff that it had approved her claim for disability benefits under the Plan. (H251.) Hartford's letter stated that

[t]he policy limits benefits for certain disabilities. According to the medical documentation in our files, [Plaintiff's] disability falls into that category. Please refer to the Maximum Benefit Duration provision on page 18 of the policy booklet for full details. With benefits commencing on 04/29/2002, no benefits will be payable beyond 04/28/2004. If [Plaintiff] is hospitalized that date may be extended.

(H252.) Page 18 of the policy booklet does not contain any "Maximum Benefit Duration provision"; instead, it contains the "Mental Illness and Substance Abuse Benefits" provision quoted above. (H564.) The letter did not quote the mental illness benefits provision.

By letter dated April 5, 2004, Hartford informed Plaintiff that "LTD benefits are no longer payable beyond 4/28/04." (H078.) Quoting the mental illness benefits provision, Hartford explained that

[t]he medical information in our file from Dr. Gold and Dr. MacKay confirm that [Plaintiff] is disabled due to Bipolar Disorder, which is a condition that falls into the category stated in the limited language above. Because of this, [Plaintiff's] benefits have been limited to a total of 24 months.

(H079.)

By letter dated October 4, 2004, Plaintiff, through counsel, requested review of Hartford's April 5, 2004 determination that Bipolar Disorder was a "mental illness" within the meaning of the Plan, arguing that "bipolar disorder is a physical or organic condition, not a mental disorder." (H068.) Hartford's Appeal Specialist summarized the request for review in the claim record, recognizing that Plaintiff's counsel "specifically challenges our classification of Bipolar Disorder falling into the plans [sic] 'Mental Illness and Substance Abuse Benefits' limitation provision" and

1   "cites case law throughout her letter and notes that we have failed to prove that this is a mental

2   illness under the Plan." (Pages following H478, at p. 1.[3])  The Appeal Specialist concluded,

3   "Unsure if the case law cited should be reviewed by the law dept. [D]iscuss with Bruce." (*Id.*)

4          Despite recognizing that the appeal raised the question whether by Bipolar Disorder is

5   "physical or organic" rather than "psychological, emotional or behavioral," Hartford never

6   investigated or reached a determination on this question.  Instead, Hartford determined to handle

7   Plaintiff's request for review by referring the file to University Disability Consortium ("UDC") to

8   "verify/confirm if the medical evidence suggests and/or supports any physical manifestations of her

9   bi-polar disorder that would be considered significant and limiting." (*Id.*)  After reviewing

10  Plaintiff's medical records, Dr. Melvin Lurie of UDC concluded, "In answer to specific questions:

11  She does not exhibit any physical manifestations of her bipolar disorder." (H39.)  Under the terms

12  of the Plan, this question was a non-starter, because "physical manifestations of any psychological,

13  emotional or behavioral disorder" are a "mental illness" within the Plan's definition. (H564.)  As

14  Hartford initially recognized, Plaintiff did not argue that she suffered from "physical

15  manifestations" of Bipolar Disorder, but that Bipolar Disorder was not a "mental illness" at all.

16  Nonetheless, Hartford denied Plaintiff's request for review on the basis that "the medical evidence

17  reveals that her symptoms are associated with bipolar disorder and there are no documented

18  physical manifestations related to this condition." (H22.)

19         Following this denial, Hartford archived Plaintiff's file. (H478.)  However, her file was

20  later retrieved and sent to Bruce Luddy. (*Id.*)  Although the claim file does not reflect Mr.

21  Luddy's position or the reason Plaintiff's file was sent to him, earlier testimony by Mr. Luddy in

22  other litigation indicates that he was Hartford's Manager of Litigation and Appeals, responsible for

23  supervising Hartford's staff members who handled appeals of long-term disability claims. (Cheng

24

25

26  ──────────────

27        [3] These pages were omitted from the administrative record produced with the Plan's
    initial disclosures and inserted without bates numbering when the record was manually filed.

28  (Declaration of Laura E. Fannon in Support of Motion for Summary Judgment (ERISA), ¶ 5.)

1    Dec., Exh. B, at 5:9, 14:16-17.)[4]  Thus, Plaintiff's claim file may have been sent to Mr. Luddy in
2    connection with a review of the appeal process on her claim.

3                                    **IV.  ARGUMENT**
4    **A.    Applicable Legal Standards.**
5          **1.    Summary Judgment Standard.**
6          Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the
7    evidence shows that there is no genuine issue of material fact and the moving party is entitled to
8    judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the
9    moving party meets these requirements, the burden shifts to the non-moving party to set forth
10   "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*,
11   477 U.S. 242, 256 (1986).  The non-moving party must merely demonstrate that there is evidence
12   from which a fact finder *might* return a verdict in his or her favor.  *Id.* at 257.  The court views all
13   evidence and factual inferences "in the light most favorable to the party opposing the [summary
14   judgment] motion."  *Scott v. Harris*, - U.S. -, 127 S. Ct. 1769, 1774 (2007) (citation omitted).
15   Summary judgment is inappropriate when a disability policy's  mental limitations provision is
16   ambiguous.  *See Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938,
17   943 (9th Cir. 1995) (finding that undefined terms such as "mental illness" and "functional nervous
18   disorder" were ambiguous).

19         **2.    Standards Pertaining to Exclusionary Provisions.**
20         Specific legal standards govern the Court's review of the application of an exclusionary
21   provision such as the Plan's mental illness limitation.  First, an exclusionary provision must be
22   "clear, plain, and conspicuous" in order to be enforceable against a participant in an insured
23   ERISA plan.  *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 387 (9th Cir. 1994).
24         Second, the burden is on the Plan to show applicability of the mental illness limitation.  "It
25   is a basic rule of insurance law that the insured carries the burden of showing a covered loss has

26   _____

27         [4]  Mr. Luddy also had a role in the defense of litigated disability claims, but Plaintiff's file
28   was forwarded to him in 2006, more than 18 months *before* she filed suit on her claim.

1  occurred and *the insurer must prove facts that bring a loss within an exclusionary clause of the*

2  *policy*." *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir. 1992)

3  (emphasis added).  Federal courts have adopted this basic rule as a principle of federal common

4  law applicable to the interpretation of ERISA-governed insurance contracts.  *See, e.g.*, *Santaella v.*

5  *Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997); *Jenkins v. Montgomery Indus.,*

6  *Inc.*, 77 F.3d 740, 743 (4th Cir. 1996); *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1007

7  (10th Cir. 2004); *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir.

8  2004).  Likewise, under California law, the insurer bears the burden of proving the applicability of

9  a policy's limitation provision.  *HS Services, Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 644-

10  45 (9th Cir. 1997) (citing *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 880, 151 Cal. Rptr. 285

11  (1978).).[5]

12        Third, a limitation provision must be strictly and narrowly construed.  *HS Services, Inc.*,

13  109 F.3d at 45.  Thus, the Plan's burden on this motion is to show that, applying a strict and

14  narrow construction of the Plan's definition of "mental illness," there exists no genuine issue of

15  material fact that Bipolar Disorder falls within that definition.  The Plan cannot carry this burden.

16        **3.**    **Standard of Review of ERISA Benefit Claims.**

17        The default standard of review of an ERISA plan administrator's benefits decision is *de*

18  *novo*, unless the administrator is vested with "discretionary authority to determine eligibility for

19  benefits or to construe the terms of a plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

20  115 (1989).  If the administrator is vested with discretion under the terms of the plan, then its

21  decisions will be reviewed for abuse of discretion; however, "if a benefit plan gives discretion to an

22  administrator or fiduciary who is operating under a conflict of interest, that conflict must be

23  weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Id.*  (citation

24  omitted).  Although the Plan here contains language purporting to confer discretion on Hartford,

25  abuse of discretion review is incompatible with the rule placing the burden on the insurer to show

26

27        [5]  Principles of state insurance law govern interpretation of policies insuring ERISA plans.

28  *See Unum v. Ward*, 526 U.S. 358, 373 (1999).

1  applicability of an exclusionary clause.  Therefore, the appropriate standard of review is de novo.

2      Even if abuse of discretion review applies, Hartford's dual role as both the claim decision-

3  maker and payor constitutes a "structural conflict of interest" that the Court must weigh in

4  applying abuse of discretion review.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th

5  Cir. 2007).[6]  A plan administrator's decision cannot be upheld on abuse of discretion review if its

6  decision conflicts with the plan terms or is based on erroneous findings of fact.  *Taft v. Equitable*

7  *Life Assur. Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1994).

8  **B.    The Plan's Limitation on Benefits for Mental Illness Is Unenforceable Because It Is**
   **Not "Clear, Plain, and Conspicuous."**

9

10      The Plan's 24-month limitation on benefits for disabilities caused by mental illness cannot

11  be enforced against Plaintiff because it is not "clear, plain, and conspicuous."  *See Saltarelli*, 35

12  F.3d at 387.  Application of this principle "appropriately serves the federal policies underlying

13  ERISA, including provision of adequate information to plan participants and protection of their

14  interests."  *Id*. at 386.  The mental illness limitation in the Plan fails this test.

15      In *Saltarelli*, a pre-existing conditions exclusion appeared in the definitions section of the

16  plan summary and the summary's table of contents did not contain a heading for the exclusion.  *Id.*

17  at 385.  As a result, the provision was "not conspicuous enough to attract the attention of a

18  reasonable layman."  *Id.*  As in *Saltarelli*, in this case the 24-month limitation is "buried" in a

19  section that appears to be conferring benefits, not taking them away.  As noted above, the heading

20  under which the limitation appears is "Mental Illness and Substance Abuse Benefits," implying that

21  the provision grants benefits rather than restricting them.  (H564.)

22      Also as in *Saltarelli*, the Plan's table of contents contains no heading for the mental illness

23  limitation.  (H547.)  Although the table contains a heading for "Exclusions," the mental illness

24  limitation is not covered in this section.  (H547, H558.)  Instead, as noted above, the Plan's

25  definitions section specifically *includes* "mental illness" in the definition of "Total Disability," and

26

27      [6]  The appropriate standard of review in cases involving such "dual role administrators" is
   the subject of a pending Supreme Court case.  *MetLife v. Glenn*, 128 S. Ct. 1117 (2008) (granting

28  certiorari).  *MetLife* was argued on April 23, 2008.

1   the section describing when disability benefits cease does *not* include expiration of the mental

2   illness limitation.  (H555, H563.)  Thus, the 24-month limitation in the "Mental Illness and

3   Substance Abuse Benefits" section actually contradicts other, plainer provisions of the Plan.  Not

4   only is the limitation not "clear, plain, and conspicuous," but the Plan as a whole is downright

5   misleading.  Accordingly, the 24-month limitation cannot be enforced against Plaintiff, and the Plan

6   is not entitled to summary judgment.

7   **C.    The Plan Cannot Carry Its Burden to Prove Facts Showing That Bipolar Disorder Is
        a "Mental Illness" Under Its Terms.**

8

9           Unlike the typical long-term disability benefits case, in which the burden is on the plan

10  participant to prove disability, the sole issue in this case is whether Plaintiff's disability arising from

11  Bipolar Disorder is covered by the Plan's mental illness limitation on benefits for disabilities due to

12  "mental illness," as that term is defined in the Plan.  As noted above, because the mental illness

13  limitation is a limitation on coverage, the burden is on the Plan to prove by a preponderance of the

14  evidence facts supporting application of the limitation. The Plan cannot carry this burden under the

15  current state of medical science and the law.

16  **1.    Under the Current State of Medical Science, Bipolar Disorder Is Not a
            "Psychological, Behavioral or Emotional Disorder or Ailment of the Mind."**

17

18          Medical and legal consensus establishes that Bipolar Disorder is not a "psychological,

19  behavioral or emotional disorder or ailment of the mind," but rather is a neurobiological condition

20  with a strong genetic component.  Under the strict and narrow construction required for

21  exclusionary clauses, *HS Services,* 109 F.3d at 644-45, Bipolar Disorder is not a "mental illness"

22  within the meaning of the Plan.

23          As explained above, Bipolar Disorder is a biological disorder of the brain that is genetically

24  influenced, treated with anticonvulsant medications, strongly associated with thyroid abnormalities,

25  and reflected in differences in the brain that are visible on imaging.  Consequently, courts

26  interpreting mental illness limitations have recognized that, at a minimum, genuine issues of

27  material fact exist as to the physical nature of Bipolar Disorder.  *See Fitts v. Unum Life Ins. Co. of*

28  *Am.,* – F.3d –, 2008 WL 819999 (D.C. Cir. Mar. 28, 2008) (vacating summary judgment for

1  plaintiff and remanding for further proceedings).  In *Arkansas Blue Cross & Blue Shield, Inc. v.*

2  *Doe*, 733 S.W.2d 429 (1987) (en banc), the court found that Bipolar Disorder was not within a

3  plan's exclusion for "mental or psychiatric conditions" but was a physical condition.  *Id.* at 431-32.

4  In *Rosenthal v. Mut. Life Ins. Co. of NY*, 732 F. Supp. 108 (S.D. Fla. 1990), the court denied the

5  defendant's motion for summary judgment, because "reasonable persons could find that Bipolar

6  Affective Disorder is a physical illness which manifests itself through mental symptoms." *Id.* at

7  110-11.

8        All of the cases involving Bipolar disorder upon which the Plan relies are inapposite.

9  *Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104 (2d Cir.2005), conflicts with Ninth Circuit

10  precedent.  In examining a similar mental illness limitation provision where terms such as "mental

11  disorder" were undefined, the Ninth Circuit reached an opposite decision.  In *Patterson*, the Ninth

12  Circuit reviewed a provision that limited benefits for disabilities "caused by or resulting from . . .

13  [m]ental, nervous, nervous or emotional disorder of any type" where the plan at issue provided no

14  definition of "mental disorder" or illustrations of conditions that fell within or outside the

15  provision.  11 F.3d at 950 (internal quotation marks omitted; alteration in original).  Because the

16  plan did not "specify whether a disability is to be classified as 'mental' by looking to the cause of

17  the disability or its symptoms," the Ninth Circuit held that where a mental illness limitation

18  provision is ambiguous, a disability falls outside the provision so long as the disorder has a physical

19  cause or physical symptoms.  *Id*. at 950-51 (reversing judgment for plan).  In *Fuller*, the mental

20  illness limitation provision at issue limited benefits to eighteen months if the disability "'arises from

21  a mental or emotional disease or disorder.'"  *Id*. at 106 (quoting plan provision).  The plan at issue

22  did not define the term "mental or emotional disease or disorder."  While acknowledging that "[i]t

23  may well be that bipolarity is a manifestation of a chemical or electrical reaction in the brain and

24  that it may be said to arise ultimately from a physical cause," the Second Circuit held that Bipolar

25  Disorder fell under the plan's limitation provision, without engaging in any inquiry regarding the

26  cause or symptoms of the claimant's Bipolar Disorder.  *Id*. at 107. Thus, *Fuller*, which conflicts

27  with *Patterson*, should not be followed.

28

1    *Vega-Muniz v. Metropolitan Life Insurance Company*, 278 F. Supp. 2d 146 (D.P.R.

2    2003), and *Equitable Life Assurance Society of the United States v. Berry*, 212 Cal. App. 3d 832

3    (1989), are inapposite for the same reason.  The plan at issue in *Vega-Muniz* defined "mental

4    illness" as a "mental, emotional, or nervous condition of any kind" where "mental, emotional, or

5    nervous condition" was undefined.  278 F. Supp. 2d at 148.   Ruling in favor of the plan, the court

6    did not conduct or direct any inquiry into the cause or the symptoms of the claimant's Bipolar

7    Disorder.  In *Berry*, the policies at issues excluded "Mental or nervous disorders" and "Mental or

8    nervous treatment" for "a neurosis, pyscho-neurosis, psychopathy, psychosis, or mental or nervous

9    disease or disorder of any kind," where terms such as "mental disorders" and "nervous disorders"

10   were undefined.  212 Cal.App.3d, at 835.  Citing no authorities and despite the ambiguities of the

11   undefined terms, the court held that "[m]anifestation, not cause" served as the "yardstick" by

12   which to determine whether a condition fell under a limitation provision.[7]  *Id*. at 840.

13       For this reason, the Plan's reliance on the DSM-IV-TR to show that the American

14   Psychiatric Association characterizes Bipolar Disorder based on symptoms rather than cause is

15   misguided.  The question in this case is whether Bipolar Disorder is within the Plan's definition of

16   "mental illness," not whether the condition is within the American Psychiatric Association's

17   definition.  Moreover, the American Psychiatric Association has cautioned that "a diagnosis does

18   not carry any necessary implications regarding the causes of the individual's mental disorder or its

19   associated impairments."  DSM-IV-TR, at xxxiii.

20       At a minimum, genuine issues of material fact exist as to whether Bipolar Disorder fits

21   within the Plan's definition of mental illness, precluding summary judgment for the Plan.

22       **2.    Under Governing Ninth Circuit Law, the Plan Defines "Mental Illness" With
23              Respect to the Cause of the Condition.**

24       Courts applying insurance policies' mental illness limitations to conditions such as Bipolar

25   _____

26   [7] The Plan argues that *Fuller*, *Vega-Muniz*, and *Berry* show that the cause of a disorder is
     irrelevant if the policy in question does not define "mental illness" in terms of causes.  Opening
27   Brief, at 17.  The Plan's argument is erroneous because it disregards *Patterson*, according to
     which ambiguities in mental limitation provision are to be resolved by looking to the cause or
28   symptoms of the disability.  The cause of the disorder *is* relevant.  11 F.3d at 950.

1    Disorder look to whether the contract at issue defines "mental illness" with respect to the cause of

2    the condition or its symptoms. *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir.

3    1993). Here, the Plan defines "mental illness" by looking to the cause of the condition at issue.

4        Under a strict and narrow interpretation of the Plan's mental illness benefits provision, the

5    definition of "mental illness" expressly includes physical manifestations of mental conditions –

6    namely, "physical manifestations of psychological, behavioral or emotional disorders," and

7    expressly excludes mental manifestations of a physical cause, "demonstrable, structural brain

8    damage." In other words, under the Plan's terms, a disability that is due to physical symptoms or

9    "manifestations" can be a "mental illness" if it has a psychological, behavioral, or emotional cause.

10   However, a disability will not be a "mental illness" under the Plan's terms if it has a physical cause,

11   such as brain damage, even if it has psychological, behavioral, or emotional symptoms.

12       The Plan's definition of "mental illness" is thus in accord with the common-sense

13   understanding of "mental illness" as referring to "a behavioral disturbance with no demonstrable

14   organic or physical basis." *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 538 (9th Cir.

15   1990). Had Hartford desired to include in the definition of "mental illness" behavioral or

16   emotional manifestations of physical conditions, it clearly was able to do so. Instead, Hartford

17   chose to explicitly include in "mental illness" physical manifestations of behavioral or emotional

18   conditions, but *not* to include behavioral or emotional manifestations of physical conditions.

19   Because there is, at a minimum, a genuine issue of material fact as to whether Bipolar Disorder

20   falls in the latter category, the Plan's motion for summary judgment should be denied.

21       **3.    The Plan's Reliance on the Language "Mental Illness That Results From Any
          Cause" And "Any Condition That May Result From Mental Illness" Is**
22       **Unavailing.**

23       The Plan's reliance on the language "Mental Illness that results from any cause" and "any

24   condition that may result from Mental Illness" in the Plan's mental illness benefits provision is

25   unavailing because these terms only apply to conditions that meet the basic definition of "mental

26   illness." As stated above, the Plan's definition of "Mental Illness" is cause-based, including

27   "physical manifestations" of mental disorders and impliedly excluding mental manifestations of

28

1  physical disorders.  At a minimum, the "from any cause" language creates an ambiguity in the Plan

2  as to whether the nature of a condition as a "mental illness" is to be determined by looking to the

3  cause or the symptoms of the condition.  *See Kunin*, 910 F.2d at 540.  On *de novo* review, that

4  ambiguity must be resolved in favor of Plaintiff.  *Id.*

5   **D.      Hartford's Decision to Terminate Plaintiff's Benefits and Interpretation of the**
          **Plan's Terms Should Be Reviewed *De Novo*.**
6

7         Although the Plan contains language conferring discretion on Hartford "to determine

8  eligibility for benefits and to construe and interpret all terms and provisions" of the Plan (H568),

9  under the circumstances of this case, Hartford's decision to terminate Plaintiff's benefits and

10 interpretation of the Plan should be reviewed not for abuse of discretion but *de novo*.  This is so

11 because, as stated above, Hartford bears the burden of proving that the mental illness limitation

12 applies and because during the claim process, Hartford failed to exercise discretion to interpret the

13 Plan provision at issue.

14        First, as set forth above, the Plan bears the burden of showing that the mental illness

15 limitation of the Plan applies to Bipolar Disorder.  Because it is the Plan's burden, not Plaintiff's,

16 to make this showing, it logically follows that no deference should be afforded Hartford's decision

17 to terminate Plaintiff's benefits or interpretation of the Plan's terms.  *Cf. HS Services, Inc.,* 109

18 F.3d at 644-45.

19        Second, Hartford failed to exercise the discretion conferred upon it as to the issue raised by

20 denying Plaintiff's request for review and by this case:  whether Bipolar Disorder is a "mental

21 illness" within the meaning of the Plan.  An administrator's discretionary plan interpretation is

22 entitled to deference only to the extent that discretion was exercised in accordance with the plan's

23 terms.  *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan*, 349 F.3d

24 1098, 1104 (9th Cir. 2003).  In particular, a plan participant may not be "sandbagged" by a

25 rationale for denying her claim that the plan administrator adduces only after the suit has

26 commenced.  *Id.* at 1104 (9th Cir. 2003) (citing *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617,

27 620 (8th Cir. 1998)).  A plan administrator's decision cannot be upheld on abuse of discretion

28

1    review based on arguments or rationales that did not form the basis of the exercise of discretion in

2    the claim process, because to do so would "contravene[] the purpose of ERISA." *Abatie*, 458

3    F.3d at 974.  In short, the Court cannot defer to an exercise of discretion that never occurred.

4        Here, the administrative record is devoid of any analysis or rationale articulated by

5    Hartford for determining that Bipolar Disorder is a "mental illness" within the meaning of the Plan.

6    Although the Plan now relies on DSM-IV, there is no reference to DSM-IV in the administrative

7    record and not the slightest indication that Hartford consulted DSM-IV or any other authority to

8    determine whether Bipolar Disorder fit the Plan's description of a "mental illness."  As set forth

9    above, Plaintiff's request for review squarely raised the question whether Bipolar Disorder was a

10   "mental illness," and Hartford recognized this issue.  However, Hartford denied the request for

11   review on a completely different ground, now abandoned:  that Plaintiff did not exhibit physical

12   manifestations of Bipolar Disorder that limited her functionality.[8]  Hartford conducted no

13   investigation and reached no conclusion on the issue raised in Hartford's April 5, 2007 letter and

14   addressed in Plaintiff's request for review.

15       Thus, Hartford, during the claim process, failed to exercise the discretion conferred upon it

16   to determine the question of whether Bipolar Disorder fell under the Plan's definition of "mental

17   illness."  In fact, Hartford failed to address that question despite the fact that it understood that

18   Plaintiff challenged Hartford's application of the mental illness limitation to her condition.

19   Furthermore, despite that knowledge, Hartford did not provide UDC with the definition of "mental

20   illness" in the Plan or instruct UDC to examine whether Plaintiff's Bipolar Disorder fell under that

21   particular definition.  (H064-65.)  Because Hartford failed to decide whether Bipolar Disorder is a

22   "mental illness" or a physical condition, there is no discretionary decision to which the Court can

23   defer.  Accordingly, Plaintiff's claim should be reviewed *de novo*.

24   //

---

26   [8]  Indeed, by basing its decision on the finding that Plaintiff did not suffer from physical
     manifestations of Bipolar Disorder, Hartford necessarily conceded that Bipolar Disorder is *not* a
27   "psychological, behavioral or emotional disorder."  This is so because, under the terms of the
     Plan, if Bipolar Disorder were "psychological, behavioral or emotional," it would make no
28   difference for Plan purposes whether Plaintiff's condition had physical manifestations.

1

**E.    If the Court Determines That the Applicable Standard of Review Is Abuse of Discretion, Evidence in the Record Supports a High Degree of Skepticism and Plaintiff Should Be Permitted to Conduct Discovery Going to Hartford's Conflict of Interest.**

2

3

4          Evidence in the record demonstrates that Hartford's conflict of interest infected its decision

5    to terminate Plaintiff's benefits.  In addressing Plaintiff's request for review, Hartford used the

6    services of UDC, which was recently recognized as

7          a company which Hartford knows benefits financially from doing repeat business with it,
        collecting more than thirteen million dollars from Hartford since 2002.  It follows that
8        Hartford knows that UDC has an incentive to provide it with reports that will increase the
        chances that Hartford will return to UDC in the future – in other words, reports upon
9        which Hartford may rely in justifying its decision to deny benefits to a Plan participant.

10    *Caplan v. CNA Financial Corp.*, – F. Supp. 2d –, 2008 WL 928656, at *6 (N.D. Cal. Apr.4,

11    2008).  For this reason, the *Caplan* court reviewed Hartford's decision with "commensurate

12    skepticism" and found an abuse of discretion.  *Id.* at *8.

13          In addition, Hartford's claims handlers noted that if Plaintiff's claim was approved, the

14    decision would have to be referred "to Director level."  (H16.)  Because this note immediately

15    follows a notation of Plaintiff's compensation (which entitled her to the maximum Plan benefit of

16    $15,000 per month), it appears that Hartford gave Plaintiff's claim special scrutiny because of the

17    large amount of her benefit.  Although the claim file shows that the claim did receive "director

18    sign-off," there is no documentation of the reason for the director sign-off or what that process

19    entailed.  Hartford also referred to the policy insuring the plan as "cancelled" and "terminated"

20    (H103), suggesting that Hartford's financial conflict was complicated by Credit Suisse having

21    subsequently cancelled its policy with Hartford.  Plaintiff should be permitted discovery going to

22    these issues.[9]

23          As discussed above, the administrative record also indicates that Plaintiff's file was

24    reviewed by Bruce Luddy, who apparently had ultimate responsibility for the long-term disability

25    appeals operation.  However, the record contains no documentation of the reasons for or outcome

26

27

28          [9]  Plaintiff's proposed discovery requests are attached to the Declaration of Vincent Cheng
    in Support of Plaintiff's Fed. R. Civ. P. 56(f) Request, submitted herewith.

1  of Mr. Luddy's review.  Likewise, the diary pages initially omitted from the administrative record

2  indicate that the Appeals Specialist would "discuss with Bruce" Plaintiff's argument that Bipolar

3  Disorder was not a "mental illness."  However, the record contains no documentation of this

4  discussion.  Plaintiff should be permitted to conduct discovery going to these issues.

5          Finally, and most fundamentally, Plaintiff should be permitted to conduct discovery going

6  to the reason for Hartford's characterization of Bipolar Disorder as a "mental illness."  Plaintiff

7  should be permitted to discover whether Hartford has any guidelines, policies, or manuals

8  providing direction to its claims handlers on application of the "mental illness" limitation to Bipolar

9  Disorder, as well as to other conditions with physical causes and behavioral or emotional

10  symptoms, such as dementia and stroke.  This information goes to the appropriate level of

11  skepticism by addressing whether Hartford had a reasoned basis for applying the "mental illness"

12  limitation to Bipolar Disorder in Plaintiff's case and whether it applies that basis consistently to

13  conditions with physical causes and behavioral or emotional symptoms.  Because heightened

14  skepticism applies and Plaintiff should be permitted to take discovery going to the appropriate

15  level of skepticism, the Plan's motion should be denied.

16  **F.    Plaintiff's Claim Should Not Be Remanded.**

17          The Plan requests that Plaintiff's claim be remanded to Hartford for a determination

18  whether Plaintiff has remained disabled within the meaning of the Plan since her benefits were

19  terminated.  This request should be denied.  There has been no intervening change in the standard

20  of disability; it remains "own occupation."  Plaintiff has been continuously disabled under the much

21  stricter standard of the Social Security Administration since October 2001.  As a result, if the

22  mental illness limitation does not apply, there is no remaining issue as to the merits of Plaintiff's

23  claim.  For this reason, the cases relied on by the Plan are inapposite.  *See Saffle v. Sierra Pacific*

24  *Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (remanding to plan

25  administrator to determine "merits" of claim); *Patterson*, 11 F.3d at 951 (remanding to plan

26  administrator to determine remaining issue regarding cause or symptoms of disorder).

27  //

28

1  **G.    Conclusion.**

2  On *de novo* review, for the reasons provided above, the Plan is not entitled to judgment as

3  a matter of law.  At a minimum, under the current state of medical science and the law, the Plan

4  cannot carry the burden showing that no genuine issue of fact exists as to whether Bipolar

5  Disorder is a "mental illness" within the meaning of the Plan.  Plaintiff has presented credible

6  evidence that Bipolar Disorder is a physical condition that is treated with medication and has a

7  genetic component.  Plaintiff's medical history demonstrates that her Bipolar Disorder is a physical

8  illness with behavioral and emotional manifestations.[10]

9  If abuse of discretion review applies, Plaintiff should be permitted to take discovery going

10  to the appropriate level of skepticism to be applied under *Abatie*.  Applying skeptical review, there

11  exists, at a minimum, a genuine issue of material fact as to whether Hartford's decision that

12  Bipolar Disorder is a "mental illness" was contrary to the terms of the Plan and based on clearly

13  erroneous findings of fact, because Plaintiff has presented evidence that Bipolar Disorder is a

14  physical illness.  Accordingly, the Plan's motion for summary judgment should be denied.

15  Dated:  May 8, 2008                    Respectfully submitted,

16                                          LEWIS, FEINBERG, LEE,
                                          RENAKER & JACKSON P.C.
17

18                             By:    /s/ Teresa S. Renaker
                                     _____
19                                   Teresa S. Renaker
                                     Vincent Cheng
20
                                     Attorneys for Plaintiff
21

22  _____

23  [10]  Under *de novo* review, Plaintiff should also be allowed to introduce her 2007 magnetic resonance imaging showing structural damage to her brain.  In *Mongeluzo*, the Ninth Circuit

24  determined that "additional evidence is necessary to conduct de novo review of the benefit decision" where the new evidence does not constitute "a new claim, but simply a new explanation

25  for [the claimant's] disability."  46 F.3d at 944.  The Ninth Circuit stated that "[c]onsideration of that explanation is part of the determination of whether physical causes or physical symptoms

26  were in whole or in part a cause of [the claimant's] disability such that benefits must be paid."  *Id*.

27  Similarly, here, under *de novo* review, introduction of the magnetic resonance imaging does not present "a new claim" but simply an "explanation" for Plaintiff's Bipolar Disorder, and thus

28  should be allowed.