1   LAURA E. FANNON (SBN 111500)
    WILSON, ELSER, MOSKOWITZ,
2         EDELMAN & DICKER LLP
    525 Market Street, 17th Floor
3   San Francisco, CA 94105-2725
    Tel.: (415) 433-0990
4   Fax: (415) 434-1370

5   Attorneys for Defendant
    GROUP LONG-TERM DISABILITY
6   BENEFITS PLAN FOR EMPLOYEES OF
    CREDIT SUISSE FIRST BOSTON CORPORATION

7

8                 UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  LARA DOE,                          )  Case No.: C07-05875 WHA ADR
                                       )
12              Plaintiff,             )  **DEFENDANTS' REPLY TO**
                                       )  **PLAINTIFF'S OPPOSITION TO**
13       vs.                           )  **MOTION FOR SUMMARY JUDGMENT**
                                       )  **(ERISA)**
14  GROUP LONG-TERM DISABILITY         )
    BENEFITS PLAN FOR EMPLOYEES OF     )  Date:    May 29, 2008
15  CREDIT SUISSE FIRST BOSTON         )  Time:    8:00 a.m.
    CORPORATION,                       )  Courtroom 9, 19th Floor
16                                     )
                Defendant.             )  Hon. William H. Alsup
17  _____   )

18                                        Documents Attached:

19                                        1. Objections to Evidence.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

ARGUMENT ...........................................................................................................1

I.  THE MENTAL ILLNESS PROVISION IS CLEAR AND SQUARELY
    ENCOMPASSES BIPOLAR DISORDER.................................................................1

    A.  Bipolar Disorder Is Diagnosed by Its Symptoms, Not By Its Causes, and the Policy's
        Mental Illness Provision Is Symptom-Based as Well........................................1

    B.  The Case Law Supports the Reasonableness of The Hartford's Interpretation of the
        Mental Illness Provision. .......................................................................3

    C.  The Provision Was Sufficiently Conspicuous. .................................................5

    D.  Plaintiff Has the Burden of Proving "Demonstrable, Structural Brain Damage"...............6

II.  PLAINTIFF'S EFFORT AT AN END RUN AROUND THE CONFLICT
     ANALYSIS IS UNAVAILING.............................................................................6

III. PLAINTIFF HAS NOT DEMONSTRATED ANY BASIS FOR TAKING
     DISCOVERY ...............................................................................................7

    A.  As The Hartford Is Not a Party to This Action, Plaintiff's Proposed Discovery
        Requests Are Improper. .........................................................................7

    B   Plaintiff Has Not Specified the Facts She Needs and How Each of Her Discovery
        Requests Addresses Them, as Required Under Rule 56(f)........................................8

    C.  The Nature of the Inquiry Presented on This Motion Does Not Justify Plaintiff's
        Proposed Fishing Expedition. ...................................................................8

IV.  IF THE COURT FINDS THE LIMITATION INAPPLICABLE,
     REMAND IS PROPER........................................................................................9

CONCLUSION..........................................................................................................10

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. C07-05875 WHA ADR
352295.1

1

## TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Abatie v. Alta Health and Life Insurance Co.*
4    458 F.3d 955 (9th Cir. 2006) ...................................................................................4

5

*Aeroquip Corp. v. Aetna Casualty & Surety Co.*
6    26 F.3d 893 (9th Cir. 1994) ....................................................................................6

7

*Baldoni v. UNUM Provident*
    2007 U.S.Dist. LEXIS 14127 (D. Or. 2007)...........................................................8
8

*Black & Decker Disability Plan v. Nord*
9    538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) .......................................9

10

*Blankenship v. Liberty Life Insurance Co.*
11    486 F.3d 620 (9th Cir. 2007) ...................................................................................4

12

*Brewer v. Lincoln National Life Insurance Co.*
13    921 F.2d 150 (8th Cir. 1990) ...................................................................................5

14

*Dames v. Paul Revere Life Insurance Co.*
15    49 F.Supp.2d 1194 (D. Or. 1999) ............................................................................9

16

*Fitts v. Unum Life Insurance Co. of America*
    2008 U.S.App. LEXIS 6451 (D.C. Cir. March 28, 2008) ...............................3, 10
17

*Fuller v. J.P. Morgan Chase & Co.*
18    423 F.3d 104 (2nd Cir. 2005) ..................................................................................4

19

*Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income*
20        *Protection Plan*
    349 F.3d 1098 (9th Cir. 2003) .................................................................................7
21

*Lynd v. Reliance Standard Life Insurance Co.*
22    94 F.3d 979 (5th Cir. 1996) .....................................................................................5

23

*Madden v. ITT Long Term Disability Plan*
24    914 F.2d 1279 (9th Cir. 1990) ...............................................................................10

25

*Patterson v. Hughes Aircraft Co.*
26    11 F.3d 948 (9th Cir. 1993) .....................................................................................4

27

*Pengilly v. Guardian Life Insurance Co.*
28    81 F.Supp.2d 1010 (N.D. Cal., 2000) ...................................................................4, 5

-ii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Saltarelli v. Bob Baker Group Medical Trust*
35 F.3d 382 (9th Cir. 1994) ........................................................................5

*Tatum v. City and County of San Francisco*
441 F.3d 1090 (9th Cir. 2006) ....................................................................8

*United States v. International Union of Petroleum and Industrial Workers*
870 F.2d 1450 (9th Cir. 1998) ....................................................................7

*Vega-Muniz v. Metropolitan Life Insurance Co.*
278 F.Supp.2d 146 (D.P.R. 2003)...............................................................5

**STATE CASES**

*Equitable Life Assur. Society v. Berry*
212 Cal.App.3d 832, 260 Cal.Rptr. 819 (1989)..................................3, 5

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. C07-05875 WHA ADR

352295.1

**ARGUMENT**

**I**

**THE MENTAL ILLNESS PROVISION IS CLEAR**

**AND SQUARELY ENCOMPASSES BIPOLAR DISORDER**

**A.    Bipolar Disorder Is Diagnosed by Its Symptoms, Not By Its Causes, and the Policy's Mental Illness Provision Is Symptom-Based as Well.**

Plaintiff's Opposition focuses heavily on her theory that the court must look to the causes of bipolar disorder in applying the Mental Illness definition in the policy.[1]   She accuses defendants of "ignoring" the causes of plaintiff's mental illness.  This is not so.  What defendants have emphasized is that cause is not determinative or relevant under this definition; the Mental Illness limitation applies to disability "because of (1) Mental Illness that results from *any* cause  . . . ."  (Emphasis added.)

The definition of Mental Illness, in turn, is symptom-based:  i.e., "any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorders . . . ."   The terms "psychological, behavioral

---

[1]   For convenience, defendants reproduce the Mental Illness provision here:

**MENTAL ILLNESS AND SUBSTANCE ABUSE BENEFITS**

**Are benefits limited for Mental Illness or substance abuse?**
If you are Disabled because of:
        (1)     Mental Illness that results from any cause; [or]
        (2)     any condition that may result from Mental Illness; . . .
. . .
then, subject to all other Policy provisions, benefits will be payable:
        (1)     only for so long as you are confined in a hospital or other place licensed
               to provide medical care for the disabling condition; or
        (2)     when you are not so confined, a total of 24 months for all such
               Disabilities during your lifetime.

**Mental Illness** means any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorders, but excluding demonstrable, structural brain damage.
H564.

-1-

1    or emotional" underscore the fact that manifestations, not causes, lie at the heart of this

2    provision.  Indeed, nothing in the Mental Illness provision indicates that Mental Illness is to be

3    defined by reference to its causes.  The phrase "from any cause" would be rendered meaningless

4    if the Mental Illness definition were interpreted to refer to causes.

5            Plaintiff's own submissions cut against her cause-based analysis of the Mental Illness

6    limitation.  Most notable is the National Institute of Mental Health article on bipolar disorder.

7    (See Plaintiff's Request for Judicial Notice, Exhibit C.)  At Page 45 of 67 (court's numbering at

8    the top of the page), the article states:

9        **Diagnosis of Bipolar Disorder**

10
11       Like other mental illnesses, bipolar disorder cannot yet be identified
         physiologically—for example, through a blood test or a brain scan.  Therefore, a
12       diagnosis of bipolar disorder is made on the basis of symptoms, course of illness,
         and, when available, family history.  The diagnostic criteria for bipolar disorder
13       are described in the *Diagnostic and Statistical Manual for Mental Disorders,
         fourth edition (DSM-IV).*
14

15       This brief passage highlights several critical points:

16       • *Bipolar disorder is explicitly characterized as a "mental illness."*

17           Hence, even though the article recognizes that there may be a variety of causes of

18           or contributors to bipolar disorder, including genetic predisposition, these causes

19           do not change its essential classification as a mental illness in the generally

20           understood sense of the phrase;

21       • *Bipolar disorder cannot be identified physiologically.*

22           Therefore, the 2007, post-appeal MRI report that plaintiff casually attaches to her

23           attorney's declaration, even if relevant and properly authenticated (see

24           accompanying Objections to Evidence), could not establish a diagnosis of bipolar

25           disorder.  Neither could it establish that the symptoms of bipolar disorder that

26           plaintiff described to her psychiatrists were attributable to the "global

27           parenchymal volume loss" described in the post-appeal MRI report;

28

---

-2-

1    • *The diagnosis of bipolar disorder is made on the basis of symptoms.*

2    To say that one has bipolar disorder *is* to say that one exhibits certain symptoms.

3    It is exactly these symptoms that formed the basis of plaintiff's disability claim,

4    and symptoms lie at the heart of the Mental Illness definition's reference to "any

5    psychological, behavioral or emotional disorder or ailment of the mind"; and

6    • *The DSM-IV is the classification source that is used to identify the symptoms*

7    *needed to make the diagnosis.*

8    The criteria for bipolar disorder include (a) a combination of specified mood

9    symptoms and (b) resulting impairment in functioning. See *DSM-IV-TR*, p. 397,

10   attached to both parties' Requests for Judicial Notice.

11   In this last regard, plaintiff contends that the claim file does not make specific reference

12   to the *DSM-IV*, and so the Plan cannot invoke it now. This is a *non sequitur*. The term "bipolar

13   disorder" *is* a creature of the *DSM-IV*. Plaintiff's psychiatrists referenced the specific ICD-9

14   code number used by the *DSM-IV* and the *DSM-IV-TR* to identify this specific mood disorder.

15   Thus, when The Hartford acknowledged plaintiff's diagnosis of bipolar disorder, it necessarily

16   recognized a condition defined by the *DSM-IV-TR*.[2]

17

18   **B.    The Case Law Supports the Reasonableness of The Hartford's Interpretation of the**

19   **Mental Illness Provision.**

20   Plaintiff takes some pains to distinguish the cases cited by defendants in their moving

21   papers concerning how various courts have regarded bipolar disorder for purposes of mental

22   illness limitations, however worded. Her efforts to do so do not bear scrutiny. For example, in

23   *Fitts v. Unum Life Insurance Co. of America*, 2008 U.S. App. LEXIS 6451 (D.C. Cir., Mar. 28,

24   2008), the D.C. Circuit considered a district court judgment in favor of the plaintiff that was

25

26   [2]    To highlight this point, certain earlier versions of the *DSM* referred to "manic-depressive
        disorder," and so that is how it was referred to in earlier cases. *See, e.g., Equitable Life*
27      *Assur. Soc'y v. Berry*, 212 Cal.App.3d 832, 260 Cal.Rptr. 819 (1989). The change in
        nomenclature to "bipolar disorder" in later versions of the *DSM* is reflected in a change
28      in nomenclature by the profession and by the courts.

-3-

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. C07-05875 WHA ADR

352295.1

1    decided based on a de novo standard of review.  Manifestations were not disputed, but the

2    administrator's own experts had suggested that the plaintiff's bipolar disorder might have a

3    physical cause.  Therefore, the appellate court vacated the lower court's decision on the ground

4    that a triable issue of fact existed concerning whether the cause of the plaintiff's illness was

5    physical.

6    Two points of distinction from *Fitts* bear emphasis:  First, in this Lara Doe case, review

7    is not de novo but rather for abuse of discretion, as required by *Abatie v. Alta Health and Life*

8    *Insurance Co.*, 458 F.3d 955, 965 (9th Cir. 2006).  Thus, the question is whether The Hartford's

9    interpretation and application of the Mental Illness provision were reasonable.

10    Second, and even more important – and plaintiff simply ignores this point – the

11    administrative record here does not contain *any evidence,* expert or otherwise, concerning the

12    cause of plaintiff's condition, even if causation were relevant under the particular policy

13    language at issue here.  Unlike the situation presented in *Fitts*, the record here contains no

14    expert report, no brain scans, nothing at all that can even be argued to raise a triable issue of

15    fact.  Plaintiff cannot now remedy this deficit by the *post hoc* submission of a 2007 MRI report,

16    much less one that her attorney purports to authenticate in violation of the Federal Rules of

17    Civil Procedure and of Evidence.

18    Plaintiff also attempts to distinguish *Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104

19    (2d Cir. 2005) by invoking *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948 (9th Cir. 1993).  Both

20    involved plans that failed to define the terms used in their respective mental/nervous limitations.

21    *Fuller* held for the insurer; *Patterson* held for the claimant.  What plaintiff fails to mention is

22    that *Fuller* was decided under an abuse of discretion standard of review, whereas *Patterson*

23    reviewed the claim administrator's decision de novo.  Under the abuse of discretion standard,

24    which applies here, policy language, even if ambiguous, is not construed against the drafter in

25    favor of the insured.  *Blankenship v. Liberty Life Ins. Co.*, 486 F.3d 620, 625 (9th Cir. 2007);

26    *Pengilly v. Guardian Life Ins. Co.*, 81 F.Supp.2d 1010 (N.D. Cal., 2000).  Again, the question

27    when applying the abuse of discretion standard is whether the claim fiduciary's interpretation

28

-4-

1    was reasonable, not whether it was correct. *Pengilly*, 81 F.Supp.2d at 1018. Therefore, it is not

2    true that *Fuller* "conflicts with Ninth Circuit precedent." Opposition at 12:9-12.

3          As an aside, it is a big stretch to say, as plaintiff did of *Patterson*, that "governing Ninth

4    Circuit law" defines "mental illness" in terms of the cause of the condition. *Patterson* merely

5    found an ambiguity on the point in the absence of any definitions and construed the mental

6    illness provision in favor of the claimant on de novo review.

7          As to *Vega-Muniz v. Metropolitan Life Ins. Co.*, 278 F.Supp.2d 146 (D.P.R. 2003); and

8    *Equitable Life Assurance Society v. Berry,* 212 Cal.App.3d 832, 260 Cal.Rptr. 819 (1989)

9    (decided under California law), plaintiff does not so much distinguish them as disagree with

10   them and dismiss their reasoning. These cases, whatever plaintiff's opinion of them,

11   nevertheless are not alone in finding for the insurer or Plan in applying mental illness limitations

12   to bipolar disorder. At a minimum, the findings of cases such as those cited above establish the

13   reasonableness of The Hartford's interpretation of its policy. *See, also, e.g., Lynd v. Reliance*

14   *Standard Life Ins. Co.*, 94 F.3d 979, 984 (5th Cir. 1996) (permitting a cause-based interpretation

15   would eliminate the distinction between mental and physical disorders); *Brewer v. Lincoln Nat'l*

16   *Life Ins. Co.*, 921 F.2d 150, 154 (8th Cir. 1990) (holding it improper to consider the cause of a

17   mood disorder because a layperson classifies an illness by its symptoms, not its causes).

18

19   **C.    The Provision Was Sufficiently Conspicuous.**

20          With respect to the conspicuousness of the Mental Illness provision, this provision is not

21   hidden away or "buried" in the policy, but rather is set forth under the following boldface

22   rubrics immediately after a provision concerning when benefits cease:

23                    **MENTAL ILLNESS AND SUBSTANCE ABUSE BENEFITS**

24                **Are benefits limited for Mental Illness and substance abuse?**

25   This provision, unlike that in *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382 (9th Cir.

26   1994), cited by plaintiff, was more than "conspicuous enough to attract the attention of a

27   reasonable layman," *id.* at 385, and certainly conspicuous enough to attract the attention of

28   someone who had been treated by a psychiatrist at least since 1999, well before her date of hire.

-5-

1   (See H505, 5/15/02 diary note; H395, Attending Physician Statement.)  Further, such provisions

2   are not unusual – as evidenced by the case law the parties have cited jointly with respect to

3   bipolar disorder alone.[3]

4

5   **D.     Plaintiff Has the Burden of Proving "Demonstrable, Structural Brain Damage."**

6           Within the definition of Mental Illness there is only one exception to the limitation, for

7   "demonstrable, structural brain damage."  Citing *inter alia* a Ninth Circuit case applying

8   California law, plaintiff contends that the Plan has the burden of proving the applicability of an

9   exclusion.  Plaintiff does not cite on this point any Ninth Circuit case applying the federal

10  common law of ERISA.  However, as stated, plaintiff's proposition is incomplete in any event.

11          The majority of courts, including the Ninth Circuit (applying California law) have held

12  that the *insured* has the burden of proving the applicability of an *exception* to the exclusion.

13  *Aeroquip Corp. v. Aetna Casualty & Surety Co.,* 26 F.3d 893, 894-95 (9th Cir. 1994).  To the

14  extent that the Ninth Circuit would embrace California law on the stated point, presumably it

15  also would hold that plaintiff has the burden of showing that her disability resulted from

16  "demonstrable, structural brain damage."  Given that plaintiff presented no admissible evidence

17  whatsoever to the claim administrator on this point, plaintiff cannot satisfy this burden.

18

19                                              **II**

20                      **PLAINTIFF'S EFFORT AT AN END RUN AROUND**

21                      **THE CONFLICT ANALYSIS IS UNAVAILING**

22          Not without some creativity, plaintiff argues that The Hartford's decision must be

23  renewed de novo because it in fact did not involve any real exercise of discretion.  To support

24  this theory, plaintiff argues that the appeal specialist, Laurie Tubbs, asked the consulting

25  psychiatrist to answer a question (i.e., concerning whether plaintiff had "physical

26

27  ───────────────

28  [3]    Indeed, plaintiff was spared a perhaps equally common limitation on coverage for
        disabilities arising from pre-existing conditions, which The Hartford's policy did not
        contain.  See diary note, H505 ("There is no pre-ex on this policy.").

                                              -6-

1   manifestations" of her bipolar disorder) that did not have any great bearing on the ultimate

2   determination.  In making this argument, however, plaintiff disregards two important points.

3       First, Ms. Tubbs also asked that the consultant review the medical evidence, contact

4   plaintiff's psychiatrist to discuss the clinical findings concerning plaintiff's condition, and

5   confirm whether the primary basis of her disability was psychiatric or physical.  H065.

6       Second, even though plaintiff disparages the way in which Laurie Tubbs exercised her

7   discretion, this is not the same thing as no exercise of discretion, as occurred in *Jebian v.*

8   *Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan*, 349 F.3d 1098, 11-4 (9th

9   Cir. 2003), cited by plaintiff.  She made her decision after considering multiple factors,

10  ultimately concluding that plaintiff's condition fell into the category of "Mental Illness" as

11  described in the policy, such that the maximum benefit already had been paid.  H021-22.  Under

12  *Abatie*, de novo review is neither appropriate nor permitted.

13

14                                **III**

15  **PLAINTIFF HAS NOT DEMONSTRATED ANY BASIS FOR TAKING DISCOVERY**

16  **A.    As The Hartford Is Not a Party to This Action, Plaintiff's Proposed Discovery**

17        **Requests Are Improper.**

18      Plaintiff seeks far-reaching written and deposition discovery concerning The Hartford's

19  claim procedures.  The Hartford, however, is not a party to this action and cannot be served with

20  notices to produce in the form suggested by plaintiff.  The Hartford's documents (and

21  employees) are not in the custody or under the control of the Plan, which is the only named

22  defendant.  *See, e.g., United States v. International Union of Petroleum and Indus. Workers,*

23  870 F.2d 1450, 1453-54 (9th Cir. 1989) (actual control over another entity's documents must

24  exist, not "an esoteric concept such as 'inherent relationship'").

25

26

27

28

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. C07-05875 WHA ADR
352295.1

**B    Plaintiff Has Not Specified the Facts She Needs and How Each of Her Discovery Requests Addresses Them, as Required Under Rule 56(f).**

Rule 56(f) requires plaintiff to specify why she is unable to present the facts essential to justify her opposition, if such is the case. In *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006), the court held, "A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."

Plaintiff has failed to satisfy the burden imposed by Rule 56(f). The proposed deposition of The Hartford's Bruce Luddy, for example, is supported by nothing more than plaintiff's expressions of curiosity about whether he might have been consulted with respect to this claim. This is not a sufficient showing under Rule 56(f) and *Tatum.*

Although defendants will not here discuss plaintiff's specific written discovery requests, which can be taken up at the hearing or in such other forum as the court orders, even a brief review of the written discovery establishes that it is far reaching and a plain violation of ERISA's underlying purpose of allowing inexpensive and expeditious resolution of benefit claims. *See, e.g., Baldoni v. UNUM Provident*, 2007 U.S. Dist. LEXIS 14127, *20-*21 (D. Or. 2007), in which the court stated:

> In light of ERISA's underlying purpose, in cases such as this, when the administrator has an inherent conflict of interest, discovery should only be allowed when narrowly tailored to significantly illuminate the conflict's effect on the specific benefit decision under review.

Given the very limited circumstances under which discovery may be allowed under ERISA, the requirement of a specific showing of need is especially crucial.

**C.    The Nature of the Inquiry Presented on This Motion Does Not Justify Plaintiff's Proposed Fishing Expedition.**

Plaintiff has admitted that "this case turns on a question of contract interpretation, *not on any accusation of malfeasance by the Plan or its insurer.*" (Plaintiff's April 7, 2008, Motion for

-8-

1    Administrative Relief To Permit Plaintiff to Proceed Under Fictitious Name, at 2:9-11

2    (emphasis added).)  The spare evidence concerning her condition that appears in the

3    administrative record underscores that the court is being asked, on this motion, simply to

4    determine one thing:  whether The Hartford reasonably concluded, based upon available

5    information, that the disabling symptoms plaintiff reported to her psychiatrist and to The

6    Hartford – mood swings, anxiety, paranoia, depression – constituted a Mental Illness as defined

7    in the policy.

8         If The Hartford was right, conflict of interest considerations do not matter.  *See Dames*

9    *v. Paul Revere Life Ins. Co.*, 49 F.Supp.2d 1194 (D. Or. 1999) (to avoid extensive and costly

10   discovery in benefits determination cases, the focus should be on the merits of the decision

11   rather than upon the motives of the decision maker).  Similarly, motives do not matter if, as

12   plaintiff admits, this is simply a case involving contract interpretation.

13        If the court should decide that plaintiff is entitled to take limited discovery directed to

14   specific issues related to a conflict of interest affecting this claim, The Hartford requests that the

15   court either determine which, if any, of plaintiff's proposed requests are proper and/or allow

16   defendants an opportunity to address the merits of each of the proposed requests and of the

17   proposed deposition of Bruce Luddy.

18

19                                            **IV**

20   **IF THE COURT FINDS THE LIMITATION INAPPLICABLE, REMAND IS PROPER**

21        In attempting to dissuade the court from remanding the case to the Plan and The

22   Hartford in the event that she prevails on this motion, plaintiff argues that the Social Security

23   Administration already has found her disabled under its rules, and so disability should be

24   assumed.  "As a result, if the mental illness limitation does not apply, there is no remaining

25   issue as to the merits of Plaintiff's claim."  Oppo. at 17:9-10.  This obviously is not so.  The

26   Hartford is not bound by the Social Security Administration's determination, as the Supreme

27   Court affirmed in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S. Ct. 1965,

28   155 L. Ed. 2d 1034 (2003) (rejecting importation of SSA's "treating physician rule" into ERISA

-9-

1   benefit determinations); and as the Ninth Circuit held in *Madden v. ITT Long Term Disability*

2   *Plan,* 914 F.2d 1279, 1285 (9th Cir. 1990) (not arbitrary and capricious to deny benefits without

3   considering a finding by the Social Security Administration that the plaintiff was totally

4   disabled).  The Hartford has no records for plaintiff beyond April 2004 and nothing but

5   plaintiff's attorney's say-so in the brief that she remains disabled.  This is not evidence at all,

6   much less evidence of plaintiff's satisfaction of the policy's disability definition.

7          In addition, plaintiff makes no mention of The Hartford's good faith offer to consider the

8   MRI report on a voluntary remand as this report might bear on the "demonstrable, structural

9   brain damage" exception to the Mental Illness limitation.  Instead, she insists in a concluding

10  footnote that she should be allowed to introduce the MRI report on de novo review, even though

11  The Hartford never had an opportunity to consider this much-later-generated report at the time

12  of its review, and even though there is no allegation that The Hartford failed to consider any

13  proffered evidence at the time of the claim and appeal.  This inequitable result should not be

14  countenanced by the court.[4]

15

16                                    **CONCLUSION**

17          This is a straightforward case:  Plaintiff claimed disability based upon bipolar disorder,

18  which is diagnosed and defined by its mood symptoms.  Her psychiatrists' office visit notes

19  discuss only these symptoms; there is not a word in them about causes, physical or otherwise.

20  The Hartford's Mental Illness limitation imposes a two-year limit on payment of benefits for

21  disability because of a psychological, behavioral, or emotional disorder from any cause.  The

22  administrative record contains evidence of nothing but these kinds of symptoms.  The question

23  thus is one of law.  Plaintiff's own proffered authorities characterize bipolar disorder as a

24

25  _____

26  [4]     At a minimum, if the court finds a triable issue with respect to the nature of plaintiff's
        condition, the court should set the matter for trial rather than award judgment in
27      plaintiff's favor *sua sponte*. *See Fitts v. Unum Life Insurance Co. of America*, 2008 U.S.
        App. LEXIS 6451 (vacating judgment in favor of plaintiff where a triable issue of fact
28      existed with respect to cause of plaintiff's condition and remanding for further
        proceedings).

                                       -10-

1  "mental illness," whatever its causes, and affirm that there is no means of identifying bipolar

2  disorder physiologically.

3         Accordingly, defendants respectfully request that the court grant their motion for

4  summary judgment or, in the alternative, that it adjudicate each of the issues set forth in their

5  notice of motion as being established in favor of The Hartford for purposes of trial, if any.

6

7                                              WILSON, ELSER, MOSKOWITZ,
                                                EDELMAN & DICKER LLP
8

9  Date: May 15, 2008                          By_____/s/ Laura E. Fannon_____
                                                       Laura E. Fannon
10                                                     Attorneys for Defendant
                                                GROUP LONG-TERM DISABILITY
11                                              BENEFITS PLAN FOR EMPLOYEES OF
                                                CREDIT SUISSE FIRST BOSTON
12                                              CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
                                                CASE NO. C07-05875 WHA ADR
352295.1